NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5023-12T1

JOHNNY MEDINA,

    Plaintiff-Appellant,

v.

CEASAR G. PITTA, M.D.,
ANTHONY L. PANARIELLO, M.D.,
BETTY A. CERVENAK, M.D. and
PALISADES EYE ASSOCIATES,

    Defendants-Respondents,

and

RIVERSIDE SURGERY &
LASER CENTER and CLARA
MAASS MEDICAL CENTER,

    Defendants.[1]

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **August 11, 2015** |
| **APPELLATE DIVISION** |

---

Argued October 6, 2014 — Decided August 11, 2015

Before Judges Espinosa, St. John and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-5532-11.

Paul F. O'Reilly argued the cause for appellant (The Law Offices of James Vasquez,

---

[1]  According to the case information statement, plaintiff's claims against these defendants were dismissed without prejudice by agreement.

P.C., attorneys; James Vasquez and Mr. O'Reilly, on the briefs).

Christine M. Jones argued the cause for respondent Ceasar G. Pitta, M.D. (Farkas & Donohue, LLC, attorneys; Evelyn C. Farkas, of counsel; Ms. Jones, on the brief).

Erica C. Avondoglio argued the cause for respondents Anthony L. Panariello, M.D., Betty A. Cervenak, M.D. and Palisades Eye Associates (Giblin & Combs, LLC, attorneys; Ms. Avondoglio, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

In this medical malpractice action, plaintiff retained an expert who was "fully retired" before any of the defendant physicians treated him. Plaintiff appeals from an order granting summary judgment to defendants on the ground that, pursuant to the New Jersey Medical Care Access and Responsibility and Patients First Act (PFA), N.J.S.A. 2A:53A-37 to -42, his proposed expert was not qualified to give expert testimony on the appropriate standard of care. He also appeals from the denial of his motion for reconsideration. For the reasons that follow, we conclude the proposed expert did not meet the qualification requirements of the PFA. We further consider plaintiff's argument that the doctrines of substantial compliance and extraordinary circumstances should preclude the dismissal of his complaint. We conclude that these doctrines

are inapplicable when summary judgment is sought based upon a plaintiff's failure to secure an expert witness who is "statutorily authorized to testify" about the standard of care in a medical malpractice case. Therefore, a dismissal with prejudice was appropriate.

## I.

### A.

Plaintiff, a diabetic, was referred to defendants in October 2007 by his endocrinologist because he was seeing spots. The vision in his right eye was 20/40 and in his left eye was 20/50. He was diagnosed with proliferative diabetic retinopathy, which means he had retinal changes in both eyes due to diabetes.

It is unnecessary to give a detailed account of plaintiff's treatment history with defendants. Over the course of the years following plaintiff's first appointment on October 10, 2007, Dr. Ceasar G. Pitta performed a number of procedures on plaintiff, beginning with a vitrectomy on the left eye and laser treatment on the right eye on October 16, 2007. He later performed these procedures on the right eye on multiple occasions: November 17, 2009, January 19, 2010, April 20, 2010, and January 25, 2011. Dr. Anthony L. Panariello performed what he described as a "complex cataract surgery" on plaintiff's right eye on January

5, 2011.  There were no complaints relative to a retinal detachment in the first post-operative visit.  However, when plaintiff saw Dr. Leonard Feiner on March 30, 2011, a B-Scan[2] revealed that plaintiff had developed a retinal detachment. Plaintiff now has no vision in his right eye.

## B.

The amended complaint, filed in November 2011, alleged that Dr. Pitta, Dr. Panariello, Betty A. Cervenak, M.D., and Palisades Eye Associates were negligent in the care provided to plaintiff during the time period from 2007 to 2011.[3]

In his October 24, 2011 expert report, Dr. Peter H. Morse opined, "Mr. Medina lost the sight in his right eye because of inadequate and dilatory treatment by Dr. Pitta.  Drs. Panariello and Cervenak were also negligent in caring for the patient but to a lesser degree."  He stated that, as of plaintiff's first appointment with Dr. Pitta in October 2007, "his eyes were eminently salvageable with adequate and timely treatment" and remained so in January 2009.  At his deposition, Dr. Morse also

---

[2]  Plaintiff's expert testified, "B-scan is an ultrasound . . . [that] can detect patterns in the back of the eye when you can't see in clearly."

[3]  Although there are some differences in the dates of treatment identified by plaintiff and defendants, these discrepancies are immaterial because it is undisputed that none of the defendants treated plaintiff before October 2007.

A-5023-12T1

stated that plaintiff's eye was still "eminently salvageable with laser treatment" in July 2009.

Dr. Morse acknowledged that Dr. Pitta's treatment notes from July 2009 reflect that he recommended laser treatment to plaintiff and that "[p]atient wishes to defer treatment." Dr. Morse agreed that plaintiff did not want laser treatment at that time and did not return to Dr. Pitta until November 2009. Dr. Morse testified he thought plaintiff's eye still remained salvageable in November 2009. He stated further that the vitrectomy with laser treatment performed by Dr. Pitta in November 2009 was the proper treatment and, in fact, there was some restoration of vision as of December 2009. Dr. Morse testified that his report contained all his opinions with regard to deviations from the standard of care.

Dr. Morse was also questioned about the earliest dates that Dr. Panariello and Dr. Cervenak deviated from accepted standards of care. He identified October 25, 2010 as the date of Dr. Panariello's first deviation from standards of medical care. He did not find any deviations in care in the cataract surgery performed by Dr. Panariello on January 5, 2011. Turning to Dr. Cervenak, Dr. Morse stated, "essentially, she only had one visit on the 20th of October 2010." He testified that, despite Dr. Cervenak's recommendation that plaintiff have a cataract

extraction, she deviated from accepted standards of medical care because she failed to order a B-scan and make sure plaintiff had follow-up for the inflammation in his eye.

C.

In December 2011, each of the defendants filed answers and demanded an affidavit of merit (AOM), N.J.S.A. 2A:53A-27. Dr. Pitta's answer complied with the requirement established by the Supreme Court in Buck v. Henry, 207 N.J. 377 (2011)[4] to "include in his answer the field of medicine in which he specialized, if any, and whether his treatment of the plaintiff involved that specialty." Id. at 396. His answer states, "Dr. Pitta is an ophthalmologist with a specialty in retinal disease who has provided care and treatment to Plaintiff . . . ." In addition, Dr. Pitta demanded answers to Form A(1) Uniform Interrogatories, Interrogatory Forms, Pressler & Verniero, Current N.J. Court Rules, Appendix II to R. 4:17-1(b) at 2604-06 (2015), which include a request for a copy of the current resume of plaintiff's expert.

Plaintiff served an AOM, dated November 7, 2011, prepared by Dr. Morse, along with a copy of his curriculum vitae. Dr. Morse's curriculum vitae states he is board certified in

---

[4] Buck was decided on August 22, 2011, approximately four months before the answers were filed in this case.

ophthalmology. The list of hospital and administrative appointments ends with the following:

> 1993-Present    Staff Physician
> McKennan Hospital
> Sioux Falls, SD
>
> 1993-Present    Staff Physician
> Sioux Valley Hospital
> Sioux Falls, SD

However, Dr. Morse was not a staff physician at either hospital at the time his curriculum vitae was provided to defendants as a "current resume."

According to the parties, the trial court held a Ferreira[5] conference on February 15, 2012, where plaintiff's counsel represented that he served an AOM and expert report written by Dr. Morse, a board certified ophthalmologist, and defendants posed no objections to his report or qualifications.[6]

Dr. Panariello and Dr. Cervenak did not identify themselves as specialists in their answers. The curriculum vitae provided with their answers to interrogatories stated they were board certified in ophthalmology. Those answers were served on March 16, 2012, approximately one month after plaintiff was required to serve an AOM. N.J.S.A. 2A:53A-27.

_____

[5] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003).

[6] We have not been provided with an order from the Ferreira conference and rely upon the representations contained in the parties' briefs.

A case management order, dated July 26, 2012, set September 2, 2012 as the final date for the service of expert reports on behalf of plaintiff.

At his deposition on January 10, 2013, Dr. Morse testified he had "fully retired" on January 1, 2007. Since that time, he had not treated any patients or had privileges at any hospitals. He had not instructed any students in an accredited medical school, health professional school, accredited residency or clinical research program for six months to one year before his retirement. When asked for an updated curriculum vitae, Dr. Morse replied, "There has not been an updating in 20 years, and there isn't going to be."

D.

Plaintiff did not file any motion to be permitted to obtain a new expert or extend the discovery end date. A motion for summary judgment was filed on behalf of Dr. Cervenak and Dr. Panariello on or about January 24, 2013, arguing that Dr. Morse did not meet the qualification requirements of the PFA to provide expert testimony on the applicable standard of care. Dr. Pitta's motion for summary judgment was filed on or about February 22, 2013. Plaintiff's opposition was limited to a letter in which he merely asserted that Dr. Morse's credentials satisfied the requirements of N.J.S.A. 2A:53A-41 because he "is

. . . board certified" in ophthalmology, "has held privileges at hospitals regarding ophthalmology, and he has also held positions in teaching schools on ophthalmology."  (Emphasis added).

By orders dated March 8, 2013, defendants' motions were granted.  The motion judge noted plaintiff's failure to comply with Rule 4:46-2,[7] but addressed the motion on the merits. Citing Ryan v. Renny, 203 N.J. 37 (2010), the motion judge stated N.J.S.A. 2A:53A-41 required a "degree of contemporaneity" in the qualifications of the expert.  The judge noted Dr. Morse testified he was no longer credentialed by a hospital to treat patients, had not been in active clinical practice since his retirement in January 2007, and had not instructed students since sometime before that date.  The judge concluded, "The expert witness was not credentialed nor specialized at the time of the alleged deviation as required under N.J.S.A. 2A:53A-41." The judge noted further that "plaintiff has not requested a waiver of the specialty provision, N.J.S.A. 2A:53A-41(c), nor

---

[7] Plaintiff did not file a responding statement that admitted or disputed each of the facts in the movant's statement of material facts as required by Rule 4:46-2(b).  His counsel stated at oral argument on the motion for reconsideration that he did not dispute any of the facts.

argued that the affidavit of merit substantially complies with the statute."

Plaintiff filed a motion for reconsideration in which he maintained Dr. Morse was qualified to testify as an expert witness. He also contended, for the first time, that the doctrines of substantial compliance and extraordinary circumstances warranted a dismissal without prejudice. At oral argument on this motion, plaintiff's counsel stated he had intended to raise these issues at oral argument of the summary judgment motions, which he did not attend. Counsel also admitted that when he first called him, Dr. Morse advised him that he was retired "somewhere around 2007" and asked if that would be a problem. Counsel replied that he would look into it but that he did not think so.[8]

The motion judge denied the motion for reconsideration and set forth his reasons in a written opinion.

## II.

Plaintiff raises a number of arguments for our consideration in his appeal. We turn to the central question

---

[8] Plaintiff provided the court with conflicting accounts as to his knowledge regarding Dr. Morse's qualifications. In his motion for reconsideration, plaintiff's counsel stated he was surprised by Dr. Morse's deposition testimony that he stopped practicing on January 1, 2007, and that all his hospital privileges ended around that time.

here, whether Dr. Morse was qualified, pursuant to the requirements of the PFA, to testify on the appropriate standard of care applicable to each of these defendants. We conclude that he was not.

The qualification and competency of a witness to provide expert testimony are matters that lie within "the sound discretion of the trial court. Absent a clear abuse of discretion, an appellate court will not interfere with the exercise of that discretion." Carey v. Lovett, 132 N.J. 44, 64 (1993). The trial court's discretion "can, of course, be guided by statute." Ryan, supra, 203 N.J. at 50.

Any expert testimony proffered by plaintiff was subject to the PFA, which established enhanced qualification requirements for experts who provide testimony or execute AOMs in medical malpractice cases.[9] The requirements vary, depending upon whether the defendant physician is a specialist, board certified in a specialty or a general practitioner. A witness who does not meet those qualifications is not "statutorily authorized to testify" as to the standard of care, even if the witness meets the qualifications set by the AOM statute, Ryan supra, 203 N.J.

_____

[9]  In Khan v. Singh, 200 N.J. 82, 100 (2009), the Supreme Court expressly noted that these additional requirements applied to causes of action arising after July 7, 2004.

at 52, or the standard set by N.J.R.E. 702. Nicholas v. Mynster, 213 N.J. 463, 468, 478-79 (2013).

A.

We first consider the qualification requirements for expert testimony against Dr. Pitta. Plaintiff argues that the PFA does not define "specialized" and does not require experts to be credentialed by a hospital, engaged in active clinical practice or involved in the instruction of students to testify against specialists, such as Dr. Pitta, who are not board certified. Therefore, he contends Dr. Morse satisfies the requirements of the PFA. This argument lacks merit.

The PFA explicitly refers to specialties and board certifications "recognized by the American Board of Medical Specialties [(ABMS)] or the American Osteopathic Association [(AOA)]." N.J.S.A. 2A:53A-41(a). When the physician defendant is a specialist, but is not board certified in the specialty, a proposed expert must be licensed as a physician in the United States and "shall have specialized at the time of the occurrence that is the basis for the action in the same specialty . . . as the party against whom or on whose behalf the testimony is offered." Ibid. (emphasis added). In Nicholas, the Supreme Court described this requirement as follows: "When a physician is a specialist and the basis of the malpractice action

'involves' the physician's specialty, the challenging expert _must practice_ in the same specialty." _Nicholas_, _supra_, 213 _N.J._ at 481-82 (emphasis added). Based upon both the commonly understood meaning of the term "specialize" and the Supreme Court's description of the statutory requirement, it is clear that "specialize" as used in _N.J.S.A._ 2A:53A-41 means "practice in a specialty" recognized by the ABMS or AOA.

Further, we agree with the motion judge that the statute requires "contemporaneity," meaning the proposed expert must actively practice in the specialty at the time of the alleged deviation to satisfy the qualification requirements of subsection (a). In _Ryan_, the Court explained what the requirements were for application of the waiver provision, _N.J.S.A._ 2A:53-41(c),[10] and noted that the waiver provision did not contain the "strict time limit[]" element common to all the

---

[10] _N.J.S.A._ 2A:53A-41(c) permits a court to waive the same specialty or subspecialty requirement upon motion

> if, after the moving party has demonstrated to the satisfaction of the court that a good faith effort has been made to identify an expert in the same specialty or subspecialty, the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field of medicine.

sections of the PFA that define qualification requirements.
Ryan, supra, 203 N.J. at 57.

> For example, where the defendant is a
> specialist or subspecialist, the person
> providing the testimony against him "shall
> have specialized at the time of the
> occurrence that is the basis for the action
> in the same specialty or subspecialty[.]"
> N.J.S.A. 2A:53A-41(a) (emphasis added).
> Further, where the defendant is board
> certified, the witness against him must also
> be board certified in the same specialty or
> subspecialty and "during the year
> immediately preceding the date of the
> occurrence that is the basis for the claim
> or action, shall have devoted a majority of
> his professional time to" active clinical
> practice or teaching of the specialty or
> subspecialty. N.J.S.A. 2A:53A-41(a)(2)
> (emphasis added). Likewise, where the
> defendant is a general practitioner, the
> expert witness, "during the year immediately
> preceding the date of the occurrence that is
> the basis for the claim or action, shall
> have devoted a majority of his professional
> time to" teaching or to active clinical
> practice as a general practitioner or in a
> practice that encompasses the medical
> condition or includes performance of the
> procedure at issue. N.J.S.A. 2A:53A-41(b)
> (emphasis added).
>
> [Id. at 57-58.]

To satisfy the "strict time limit" requirement applicable
for testimony against Dr. Pitta, a proposed expert had to
practice in the specialty of ophthalmology at the time of the
alleged deviation. Dr. Morse was vague as to when such
deviation occurred, stating plaintiff's vision loss was caused

by Dr. Pitta's "inadequate and dilatory treatment," but conceded that plaintiff's vision remained salvageable as late as November 2009. Even if plaintiff is afforded all favorable inferences, the alleged delay in treatment could occur no earlier than Dr. Pitta's first appointment with plaintiff in October 2007. It is undisputed that Dr. Morse was no longer practicing in the specialty of ophthalmology at that time. Therefore, he did not meet the qualification requirements to testify as to the standard of care applicable to Dr. Pitta.

B.

Under the PFA, additional qualification requirements apply if the defendant physician, like Dr. Panariello and Dr. Cervenak, is board certified.

> [I]f the person against whom or on whose behalf the testimony is being offered is board certified and the care or treatment at issue involves that board specialty or subspecialty . . . the expert witness shall be:
>
> (1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; or
>
> (2) a specialist or subspecialist . . . who is board certified in the same specialty or subspecialty . . . and during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to either:

15                                    A-5023-12T1

(a) the active clinical practice of the same health care profession in which the defendant is licensed, and, if the defendant is a specialist or subspecialist . . . the active clinical practice of that specialty or subspecialty . . . or

(b) the instruction of students in an accredited medical school, other accredited health professional school or accredited residency or clinical research program in the same health care profession in which the defendant is licensed, and, if that party is a specialist or subspecialist . . . an accredited medical school, health professional school or accredited residency or clinical research program in the same specialty or subspecialty . . . or

(c) both.

[N.J.S.A. 2A:53A-41(a) (emphasis added).]

Plaintiff acknowledges that Dr. Morse would not satisfy the PFA's additional requirements for testifying against a board certified specialist, such as Dr. Panariello and Dr. Cervenak. However, he contends these defendants should have been estopped from raising their specialty to challenge Dr. Morse's qualifications because they failed to list their specialty in their answers. Again, we disagree.

Plaintiff's estoppel argument was raised for the first time in plaintiff's motion for reconsideration. This was inappropriate. To properly contest the motions on this ground,

16

plaintiff was required to present his argument in his written opposition to the motions. Pressler & Verniero, supra, comment 2 on R. 1:6-2 ("[R]esponsive papers must not only object generally to the relief sought but must state with particularity the basis, whether legal, factual or both, of such opposition.")

Reconsideration is to be utilized only in those cases "in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). In short, a motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling. Filing a motion for reconsideration does not provide the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion. See Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). Despite the procedural infirmity, we consider plaintiff's estoppel argument and find it inapplicable to the facts in this case.

Just as "it is the duty of litigants to make a good faith effort to obtain an equivalently-qualified expert in a malpractice case," Ryan, supra, 203 N.J. at 56, a defendant

physician must comply with the requirement established in <u>Buck</u>, <u>supra</u>, 207 <u>N.J.</u> at 396, to alert the plaintiff to the higher standard to be met by identifying their specialty, if applicable, in the answer. <u>R.</u> 4:5-3.[11] We note that <u>Buck</u> concerned the sufficiency of an affiant's qualifications to author an AOM and that the remedy ordered by the court, albeit before <u>R.</u> 4:5-3 was amended, was to reverse the dismissal of the plaintiff's complaint and remand with instructions to provide the plaintiff with additional time to obtain an AOM that complied with the statute's requirements. <u>Buck</u>, <u>supra</u>, 207 <u>N.J.</u> at 395. The Court did not instruct what remedy would be appropriate in cases thereafter in which a physician defendant failed to provide the necessary information regarding specialty in his or her answer. Although it is unlikely that such an omission could warrant scuttling the Legislature's scheme of enhanced qualification requirements for a testifying expert, we conclude it is unnecessary in this case to consider what remedy is appropriate.

This is not a case in which the deficiency in Dr. Morse's qualifications relates to one of the more specialized requirements applicable to a board certified specialist. The

_____

[11] The rule was amended, effective September 1, 2012, in response to the court's direction in <u>Buck</u>, <u>supra</u>, 207 <u>N.J.</u> at 396.

deficiency lies in the fact he was retired and not practicing at the time of the alleged deviations in care by Dr. Panariello and Dr. Cervenak.

As we have noted, the PFA imposes "strict time limits" tied to the date of the occurrence that is the basis for the malpractice action for each of the categories of physicians. See Ryan, supra, 203 N.J. at 57. In the case of a specialist who is not board certified, the expert must "have specialized <u>at the time of the occurrence</u> . . . in the same specialty." N.J.S.A. 2A:53A-41(a) (emphasis added). If the defendant physician is board certified, the statute requires that the proposed expert "shall have devoted a majority of his professional time to . . . active clinical practice" or teaching of the specialty or subspecialty "<u>during the year immediately preceding the date of the occurrence</u>." N.J.S.A. 2A:53A-41(a)(2) (emphasis added). The strict time limit applicable to general practitioners similarly requires that the proposed expert "shall have devoted a majority of his professional time to" teaching or to "active clinical practice as a general practitioner" performing the relevant procedure "<u>during the year immediately preceding the date of the occurrence</u>." N.J.S.A. 2A:53A-41(b) (emphasis added). No matter what category of physician is applied, Dr. Morse's qualifications come up short. Therefore,

he was not statutorily authorized to testify against Dr. Panariello and Dr. Cervenak.

## III.

Plaintiff also argues that the doctrines of substantial compliance and extraordinary circumstances should apply to reverse the dismissal with prejudice. Plaintiff raised the issues of substantial compliance and extraordinary circumstances for the first time in his motion for reconsideration.[12] Nonetheless, we address plaintiff's contention to clarify that the doctrines of substantial compliance and extraordinary circumstances do not apply when the qualifications of a witness to "give expert testimony" are measured under the PFA.

The enhanced qualification requirements of the PFA explicitly apply to both the affiant for an AOM and the expert witness a plaintiff seeks to rely upon at trial. N.J.S.A. 2A:53A-41 ("In an action alleging medical malpractice, a person shall not give expert testimony or execute an affidavit pursuant to the [AOM statute] on the appropriate standard of practice or care unless" the enumerated criteria are satisfied). However,

---

[12] Plaintiff contended that he intended to raise these issues at oral argument on the summary judgment motions. Like his estoppel argument, these issues were not properly presented to the motion judge. Pressler & Verniero, supra, comment 2 on R. 1:6-2.

the analysis required to determine the appropriate disposition when the sufficiency of a proposed expert's qualifications is challenged differs sharply depending upon whether the issue is raised within a challenge to the sufficiency of the AOM or in a summary judgment motion.

"The core purpose underlying the [AOM] statute is to require plaintiffs . . . to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation." <u>Ryan</u>, <u>supra</u>, 203 <u>N.J.</u> at 51 (citation and internal quotation marks omitted). A "plaintiff's failure to serve the affidavit within 120 days of the filing of the answer is considered tantamount to the failure to state a cause of action, subjecting the complaint to dismissal with prejudice." <u>Ferreira v. Rancocas Orthopedic Assocs.</u>, 178 <u>N.J.</u> 144, 150 (2003) (citing <u>N.J.S.A.</u> 2A:53A-29; <u>Palanque v. Lambert-Woolley</u>, 168 <u>N.J.</u> 398, 404 (2001); <u>Alan J. Cornblatt, P.A. v. Barow</u>, 153 <u>N.J.</u> 218, 247 (1998)). The exceptions of extraordinary circumstances and substantial compliance[13] are intended to "temper the draconian results of an

---

[13]  To seek relief under the doctrine of substantial compliance,

> a plaintiff must show: a series of steps were taken to comply with the statute; general compliance with the purpose of the statute; the defendant had reasonable notice

(continued)

inflexible application of the statute" that would extinguish a meritorious claim in its infancy. Id. at 151. Even so, "carelessness, lack of circumspection, or lack of diligence on the part of counsel are not extraordinary circumstances which will excuse missing a filing deadline." Palanque, supra, 168 N.J. at 404-05 (quoting Burns v. Belafsky, 326 N.J. Super. 462, 470 (App. Div. 1999), aff'd, 166 N.J. 466 (2001)).

The AOM must be served "[i]n the early stages of a medical malpractice action," and a Ferreira conference, held "within ninety days of the service of an answer," was "intended to resolve questions concerning the propriety of an affidavit before the end of the statutory time limit . . . ." Buck, supra, 207 N.J. at 382-83 (citing Ferreira, supra, 178 N.J. at 154-55). If an AOM was deemed to be deficient, the plaintiff would "have to the end of the 120-day time period to conform the

_____

(continued)
    of the plaintiff's claim; a reasonable
    explanation for plaintiff's failure to
    strictly comply with the statute; and lack
    of prejudice to the defendant.

    [Stoecker v. Echevarria, 408 N.J. Super.
    597, 612 (App. Div.) (citing Ferreira,
    supra, 178 N.J. at 151), certif. denied, 200
    N.J. 549 (2009).]

See also Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 353 (2001).

affidavit to the statutory requirements." Ferreira, supra, 178 N.J. at 155. Although the goal is to safeguard "otherwise worthy causes of action . . . [from being] needlessly dismissed," Buck, supra, 207 N.J. at 383 (citing Ferreira, supra, 178 N.J. at 154-55), it is understood that under the AOM statute, "the failure to file an appropriate affidavit within the statutory time limits may result in dismissal of even meritorious cases." Id. at 382 (citing Ferreira, supra, 178 N.J. at 154).

When the challenge targets the qualifications of a witness to testify regarding the standard of care, the analysis is governed by the summary judgment rule, R. 4:46-2. Like the AOM statute, the summary judgment rule serves "two competing jurisprudential philosophies." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541 (1995). While "every litigant who has a bona fide cause of action or defense [should be afforded] the opportunity to fully expose his case," it is equally important to provide protection "against groundless claims and frivolous defenses, not only to save antagonists the expense of protracted litigation but also to reserve judicial manpower and facilities to cases which meritoriously command attention." Id. at 541-42 (citation and internal quotation marks omitted); cf. Ferreira, supra, 178 N.J. at 150 (stating "the dual purpose" of the AOM

statute is "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court" (citation and internal quotation marks omitted)). However, there are fundamental differences between the "weeding" performed under the AOM statute and that accomplished through summary judgment practice.

The AOM statute's procedural requirements apply in the earliest stage of the litigation, when discovery is almost certainly incomplete, and a dismissal for non-compliance may be warranted even if a claim has merit. In summary judgment motions, the determination as to whether a bona fide cause of action exists is made after the parties have had an opportunity to develop the evidence they will rely upon at trial. See James v. Bessemer Processing Co., 155 N.J. 279, 310-11 (1998) (holding summary judgment was premature because plaintiff had not "engaged in extensive discovery"); Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193 (1988) (finding it "especially inappropriate" to grant summary judgment when discovery is incomplete). The court reviews a record that includes "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," R. 4:46-2(c), to make a determination whether the claim has

substantive merit. The motion judge must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, supra, 142 N.J. at 523. Because summary judgment is denied if the evidence meets this standard, it is intended that meritorious claims will not be dismissed. See id. at 540-42.

The summary judgment motions here were filed well after the exchange of interrogatories and expert reports and the deadline set in the case management order for the production of plaintiff's expert reports. The motions followed the deposition of plaintiff's sole expert as to the standard of care and alleged deviations in care. There was no motion filed by plaintiff to extend discovery or to seek an alternative expert. It cannot be disputed that the record was ripe for summary judgment.

Similarly, there is no question that expert testimony was required for plaintiff's claims to succeed. "To establish a prima facie case of negligence in a medical-malpractice action, a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard

of care; and (3) that the deviation proximately caused the injury." Gardner v. Pawliw, 150 N.J. 359, 375 (1997) (citations omitted); accord Nicholas, supra, 213 N.J. at 478.

> It is generally recognized that in the ordinary medical malpractice case the standard of practice to which [the defendant-practitioner] failed to adhere must be established by expert testimony, and that a jury generally lacks the requisite special knowledge, technical training and background to be able to determine the applicable standard of care without the assistance of an expert.
>
> [Rosenberg v. Cahill, 99 N.J. 318, 325 (1985) (citation and internal quotation marks omitted).]

The need for expert testimony regarding deviation from the appropriate standard is not limited to medical malpractice, but applies "in nearly all malpractice cases." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 362 (2004); accord Brach, Eichler, P.C. v. Ezekwo, 345 N.J. Super. 1, 12 (App. Div. 2001). Moreover, "[a] party cannot defeat a motion for summary judgment merely by submitting an expert's report in his or her favor. In order for such a report to have any bearing on the appropriateness of summary judgment, it must create a genuine issue of material fact." Brill, supra, 142 N.J. at 544 (citation omitted) (declaring an expert opinion "based on erroneous or nonexistent facts is worthless"); see, e.g., Shelcusky v. Garjulio, 172 N.J. 185, 200-01 (2002) ("The

very object of the summary judgment procedure . . . is to separate real issues from issues about which there is no serious dispute. Sham facts should not subject a defendant to the burden of a trial."); Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 104 (App. Div. 2001) (finding summary judgment appropriate where net opinion by expert failed to establish a standard by which to judge the defendant's conduct).

Without testimony from a statutorily authorized expert, plaintiff cannot establish the applicable standard of care. Therefore, summary judgment was appropriate. Nicholas, supra, 213 N.J. at 468.

The doctrine of substantial compliance may be invoked when dismissal is sought based upon deficiencies in an AOM "so that technical defects will not defeat a valid claim." Ferreira, supra, 178 N.J. at 151 (emphasis added). It is not intended to shield a plaintiff from the dismissal of a claim that is substantively defective. Moreover, the application of the doctrine to summary judgment motions would materially erode the jurisprudence that has developed since Brill and eviscerate the remedial purpose of the PFA to establish enhanced qualification requirements for expert witnesses as part of "a comprehensive set of reforms affecting the State's tort liability system,

health care system and medical malpractice liability insurance carriers," N.J.S.A. 2A:53A-38(f).

Similarly, the analysis required for a summary judgment motion does not allow for a claim of extraordinary circumstances. When a party concludes circumstances exist that would warrant relief, the appropriate course of action is to pursue remedies such as those afforded by Rules 4:17-7 and 4:24-1(c).

Because the doctrines of substantial compliance and extraordinary circumstances would subvert rather than promote the remedial purpose of the PFA, we conclude these doctrines are inapplicable when summary judgment is sought based upon a failure to meet the PFA's enhanced qualification requirements for testifying experts.

IV.

After reviewing plaintiff's remaining arguments in light of the record and applicable legal principles, we conclude that the arguments raised in Points I, V, VI, VII and VIII lack sufficient merit to warrant more than the following limited discussion. R. 2:11-3(e)(1)(E).

In Point I, plaintiff cites the requirements of the AOM statute that an expert be either board certified in the general area or specialty or have five years' clinical practice in the

general area of specialty. He argues that Dr. Morse is qualified to testify pursuant to these requirements because he is "currently a Board Certified Ophthalmologist and had practiced as a Board Certified Ophthalmologist from 1971 to 2007." In Ryan, supra, 203 N.J. at 52, the Court observed that the original requirements for the affiant of an AOM set forth in the AOM statute were modified by the PFA, which "provide[d] more detailed standards for a testifying expert and for one who executes an affidavit of merit, generally requiring the challenging expert to be equivalently-qualified to the defendant." Therefore, plaintiff's effort to cast Dr. Morse as a qualified expert because he meets the more generalized requirements of the AOM statute is unavailing.

In Point V, plaintiff argues that, as a result of defendants' failure to object to Dr. Morse's qualifications until February 2013, the proper remedy was to permit him to cure any deficiencies rather than dismiss the complaint with prejudice. The notion that defendants' objection was untimely lacks factual support. It was not until Dr. Morse's deposition in January 2013 that defendants first learned Dr. Morse had "fully retired" in January 2007, before the alleged malpractice, and did not have any hospital privileges thereafter. Defendants acted promptly after receiving this information.

Plaintiff argues in Point VI that, as a result of defendants' "misfeasance," he was deprived of his right to oral argument on the summary judgment motions and later held to a higher standard applicable to his motion for reconsideration. Plaintiff's counsel, who did not appear for oral argument of the summary judgment motions, certified he was never informed of the date and time for oral arguments. He contends he was denied his right to oral argument as a result. However, counsel relocated his office on March 2, 2013, and did not inform any of the defendants of his new contact information. Moreover, plaintiff was given a full opportunity to present his arguments at the motion for reconsideration. We find no error on this record.

Plaintiff also argues the AOM statute and the PFA violate the New Jersey Constitution (Point VII) and that the statutes are invalid because the Legislature failed to follow the procedure for the adoption of rules of evidence set forth in N.J.S.A. 2A:84A-33 to -44 (Point VIII). These arguments are raised for the first time on appeal and do not fall within the exceptions that would warrant our consideration. See US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 483 (2012). Moreover, both statutes have withstood prior constitutional challenges. See Ferreira, supra, 178 N.J. at 149 n.1 (citing Cornblatt, supra, 153 N.J. at 248 (noting "[i]n the more than half-dozen

cases in which this Court has grappled with the Affidavit of Merit statute since <u>Cornblatt</u>, no one has questioned, and this Court has never revisited, the statute's constitutionality")); <u>N.J. State Bar Ass'n v. State</u>, 387 <u>N.J. Super.</u> 24 (App. Div.) (rejecting challenges to the constitutionality of the PFA), <u>certif. denied</u>, 188 <u>N.J.</u> 491 (2006).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5023-12T1