> **NOT FOR PUBLICATION WITHOUT THE**
> **APPROVAL OF THE APPELLATE DIVISION**
>
> This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1183-18T3

WILLIAM J. ENGELHARDT,
JR.,

      Plaintiff-Appellant,

v.

DIANA ENGELHARDT,

      Defendant-Respondent.

_____

          Argued November 4, 2019 – Decided February 24, 2020

          Before Judges Fasciale and Moynihan.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0658-04.

          Michael Jude Gunteski argued the cause for appellant (Law Offices of Darren C. O'Toole, LLC, attorneys; Carrie Ayn Smith, of counsel and on the brief).

          Respondent has not filed a brief.

PER CURIAM

Plaintiff William J. Engelhardt, Jr. (husband), appeals from the trial court's August 30, 2018 order granting, in part, his motion to terminate/modify alimony to defendant[1] Diana Engelhardt (wife) and its October 29, 2018 order denying his motion for reconsideration of the August 2018 order.[2]

On appeal, husband argues the trial court erred by: failing to properly consider and weigh the applicable statutory factors in determining his alimony obligation; considering income from his retirement benefit that wife received as part of the equitable distribution to which the parties agreed; and failing to consider his right to maintain the marital lifestyle and setting an alimony obligation that resulted in wife having a greater income than he. We are unpersuaded by husband's arguments but are constrained to remand this matter for the trial court to explain the calculation of its alimony award.

Husband moved to permit his immediate retirement and terminate his weekly alimony obligation, set at $550 in an oral stipulation of settlement that

_____

[1] Wife was represented by counsel at the trial court level. In a letter filed March 12, 2019, she informed this court she could no longer afford legal representation and would proceed pro se. She further indicated she would not be filing a brief although she disagreed with husband "and his requests on appeal."

[2] Husband did not separately brief the denial of his motion for reconsideration but incorporates references to the court's October 29, 2018 order in parts of his arguments.

A-1183-18T3

was incorporated in the parties' dual judgment of divorce (DJOD) entered in January 2005. The trial court held a two-day plenary hearing at which both parties testified. Determining husband was entitled to a modification of his alimony obligation, the court, in a written decision, reduced same to $250 per week. Husband filed a motion for reconsideration, arguing the court failed to consider wife's social security benefit of $1127 per month and should have considered only his active contribution to his retirement fund since the divorce, which was $26,000. The court denied the motion in a written decision.

Our review of Family Part orders is limited; we accord deference to the court's "special jurisdiction and expertise" in family law matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). The family court's findings are binding so long as its determinations are "supported by adequate, substantial, credible evidence." Id. at 411-12. Evidence derived from testimony is given great deference since the trial court is better suited to evaluate the credibility of the witnesses. Id. at 412. Only when the trial court's findings are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice" is reversal warranted. Rova Farms Resort, Inc. v. Inv'rs. Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Township of North Bergen, 78 N.J. Super. 154, 155 (App.

Div. 1963)).  The trial court's "legal conclusions, and the application of those conclusions to the facts, are subject to [this court's] plenary review," Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)), as are all legal issues, Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

"Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court."  Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015).  Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion[.]"  Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010).  "[A] motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling."  Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015).  It "does not provide the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion."  Ibid.

Turning first to husband's argument that the trial court failed to weigh the factors set forth in N.J.S.A. 2A:34-23(j)(3), the record shows that the court

analyzed each factor of the statute[3] and detailed its findings of fact, recounting

the parties' testimony, in determining the alimony award.

---

[3] N.J.S.A. 2A:34-23(j)(3) provides:

> When a retirement application is filed in cases in which there is an existing final alimony order or enforceable written agreement established prior to the effective date of this act, the obligor's reaching full retirement age as defined in this section shall be deemed a good faith retirement age. . . . In making its determination, the court shall consider the ability of the obligee to have saved adequately for retirement as well as the following factors in order to determine whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate:
>
> (a) The age and health of the parties at the time of the application;
>
> (b) The obligor's field of employment and the generally accepted age of retirement for those in that field;
>
> (c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;
>
> (d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;

5

Husband contends the trial court, "despite alleging that it gave significant weight to ['the ability of the obligee to have saved adequately for retirement,' N.J.S.A. 2A:34-23(j)(3),] failed to afford adequate weight to [wife's] ability to save." He argues wife failed to invest her share of the retirement account pursuant to the DJOD which required her to transfer her one-half share of $160,634 retirement fund "into an Individual Retirement Account in [her] sole

(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

[See Landers v. Landers, 444 N.J. Super. 315, 324-25 (App. Div. 2016) (finding N.J.S.A. 2A:34-23(j)(3) governs the analysis of motions for modification or termination of alimony based on retirement where the alimony order is established prior to the effective date of the statute's amendment, September 10, 2014).]

6

name by way of a Qualified Domestic Relations Order, if required." Husband asserts wife received $155,000.00 from the divorce and these "funds have been squandered and liquidated." Finally, he argues the court's findings regarding wife's "financial interdependence contradict the findings regarding the ability to save."

In assessing the statutory ability-to-save factor, the court determined wife had some opportunity to save for retirement, having "left the marriage with assets and essentially no liabilities," and with the proceeds from the sale of the marital home and $10,000 from equitable distribution. The court found wife received weekly alimony of $550 and $80,000 in retirement assets from husband's fund, paid over ten years in amounts of $8000. Wife used this money to pay taxes on her alimony payments, credit card bills, car repairs, and Christmas gifts for her family. The court found wife did not have a financial plan and never appreciated the possibility that alimony payments might one day change. The court recognized wife's employment instability throughout the years, and the budget cuts and implemented money-saving efforts she made in reaction to this situation.

The court gave "some significant" weight to this factor, but also properly considered other factors in determining the amount of the alimony award,

including the age and physical condition of the parties, and their employment capabilities and projected earnings. The court noted wife was already required to move from moderate income housing to low income housing. The court concluded: "Although [it] did find that [wife] had the ability to some extent to save for retirement, the [c]ourt is clearly convinced that [wife] would not be able to live independently and would have great difficulty in maintaining a permanent residence in the absence of alimony." In that the trial court's conclusion is based on a consideration of all the statutory factors and its determination is "supported by adequate, substantial, credible evidence," Cesare, 154 N.J. at 412, it is entitled to our deference.

We determine husband's argument that the trial court did not consider wife's income, including her social security benefits, in determining the alimony award is without merit. In denying husband's reconsideration motion, the court recognized his contention that it "failed to consider that [wife] receives a gross [s]ocial [s]ecurity benefit of [$1127] per month." The court found that husband was "mistaken in this regard. That source of income was, indeed, considered by the [c]ourt."

That finding is supported. In its initial decision, just before noting wife's dependence on alimony payments and the income she received from her two

8

part-time jobs, the court recounted wife's testimony during the plenary hearing and stated, wife "made the determination that she would need to begin to collect her social security early in order to meet her expenses." Wife testified at the plenary hearing she received $13,257 in yearly social security benefits.

We, likewise find meritless husband's argument that in determining the alimony award, the trial court contravened N.J.S.A. 2A:34-23(b) and N.J.S.A. 2A:34-23(j) by erroneously considering both the retirement fund that was equitably distributed to wife and income derived therefrom.

N.J.S.A. 2A:34-23(b) provides: "When a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the court shall not consider income generated thereafter by that share for purposes of determining alimony." N.J.S.A. 2A:34-23(j)(4) provides: "The assets distributed between the parties at the time of the entry of a final order of divorce or dissolution of a civil union shall not be considered by the court for purposes of determining the obligor's ability to pay alimony following retirement."

"When a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the court shall not consider income generated thereafter by that share for purposes of determining alimony." Innes v. Innes, 117 N.J. 496, 505 (1990) (quoting L. 1988, c. 153, § 3). "Conversely, the rule

does not bar counting as income for determining alimony that portion of the former spouse's pension attributable to post-divorce employment, and [is] therefore not subject to division as marital property at [the] time of divorce." Steneken v. Steneken, 367 N.J. Super. 427, 437-38 (App. Div. 2004), aff'd as modified, 183 N.J. 290 (2005). "In other words, a supporting spouse's pension may be considered for purposes of alimony to the extent that post-divorce earnings enhance its value." Id. at 438; see also Claffey v. Claffey, 360 N.J. Super. 240, 261 (App. Div. 2003) (holding that "income from pension benefits earned after the filing of the complaint for divorce may be considered for purposes of alimony modification").

Husband argues "despite the plain language of [N.J.S.A.] 2A:34-23(b), the [c]ourt considered income from [his] retirement assets which had previously been distributed as part of the divorce," and that the court erroneously considered yearly payments of $20,000 he is to receive for the next ten years from his retirement fund. He also contends the language of N.J.S.A. 2A:34-23(j)(4) "clearly provides that assets previously divided as part of the divorce shall not be considered in determining the obligor's ability to pay."

Although the court mentioned those yearly payments, it explicitly concluded it could not consider the entirety of the amount in the fund because

$80,000 plus any gains were the subject of equitable distribution during the divorce. The balance of the fund as of April 30, 2018, was $220,000.[4] At the time of the divorce, the account balance was $160,634. Wife received one half of that amount, so approximately $80,000 remained. The court determined approximately $140,000 accrued since the divorce,[5] and concluded it was permitted to consider a portion of this fund: $26,000. In arguing the maximum amount of past-divorce contributions the trial court could consider, husband admitted contributing that amount since the dual judgment of divorce. On reconsideration, the court clarified "the $26,000[] figure suggested by [husband] is the <u>minimum amount</u> that could be considered."

The court determined husband—who bore the burden of proof, N.J.S.A. 2A:34-23(j)(3) (providing the obligor must show, by a preponderance of the evidence, he or she has demonstrated that modification or termination of alimony is appropriate)—"failed to meet [his] burden with regard to the

---

[4] The court's decision states the number is "$220,9220.62." Given husband's testimony, this appears to be a typographical error; the number should be $220,922.62. If husband is to receive $20,000 per year for ten years, the total should amount to around $200,000.

[5] The court's decision states the number is "$140,000,920[.]" This also appears to be a typographical error. By subtracting the amount that remained after equitable distribution ($80,000) from the balance as of April 2018 ($220,000), the amount accrued post-divorce should be around $140,000.

A-1183-18T3

valuation of the retirement asset."  The court further determined, "[t]here was insufficient documentation provided as to the value of the asset vis a vis the portion of the asset that had already been divided as part of [the] equitable distribution and its increased valuation and the new contributions with their concomitant increases in value."

During oral argument for the motion for reconsideration, the trial court amplified its finding regarding husband's failure to meet his burden of proof:

> But the fact is that he still continued to make contributions to that fund afterwards and those contributions also earned a result for him, and none of that information was provided in hard fact to the Court.
>
> So, in essence, [husband] didn't meet [his] burden in that regard to establish that $26,000 should be the minimum. Thus, leaving the [c]ourt open to consider more than the $26,000, and I can tell you that my decision contemplated more than the $26,000 because that was the basic contribution, so he did make income off of that.

The court made clear it did not consider more than $140,000, and it "didn't even come close."

But it did not specify the amount it did consider over and above $26,000, constraining our review of the ultimate calculation of the award.  See R. 1:7-4; Gnall v. Gnall, 222 N.J. 414, 428 (2015) ("Failure to make explicit findings and clear statements of reasoning 'constitutes a disservice to the litigants, the

12

attorneys, and the appellate court.'" (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980))). Although the court was aware of the prohibition against considering pre-divorce contributions that were subject to equitable distribution and the gains derived from same—explicitly saying so in its initial decision and further explained in its reconsideration decision—it should have set forth the considered amounts.

Thus, we remand this matter for the trial court to particularize those values, how the court derived same and how they factored into the final alimony award. We leave to the trial court's discretion whether it requires further proceedings or submissions. We express no opinion regarding the ultimate award, leaving that determination to the court's good discretion.

Inasmuch as the court's findings may have an effect on the parties' relative standards of living, the trial court must reconsider any impact in its calculation of the award on remand. We do not agree with husband that the court failed to do so in its prior decisions. The record reveals the court fully considered the parties' positions.

Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1183-18T3