**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2255-24

IN THE MATTER OF
NORMA I. VELEZ.

_____

Submitted January 27, 2026 – Decided February 25, 2026

Before Judges Gooden Brown and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. CP-0116-22.

Paul R. Gauer, attorney for appellant Sally Velez.

Respondents Norma Velez and Norma I. Velez and have not filed a brief.

PER CURIAM

Sally Velez appeals from a January 15, 2025 Chancery Division order directing her to comply with the sale of residential property located in Bellville, and a February 20, 2025 order denying her motion for reconsideration. We affirm.

We glean these facts from the record. Sally Velez, Norma Velez, and Norma I. Velez are each one-third owners of the Belleville property. Sally[1] and Norma are the daughters of Norma I.

On June 9, 2022, the three parties entered into a settlement agreement arising from a lawsuit in which Norma I. "challeng[ed] a deed allegedly conveying [one-third] of the title from Raul Velez[2] to Sally." In turn, Sally "[sought] title to the property." The settlement agreement required Sally to "perfect clean title to the [one-third] of the property that was previously owned by Raul" within "[forty-five] days of the date of th[e] agreement." In the event Sally failed to perfect clean title, Norma I. "may proceed to list the property for sale, with all of the benefits and obligations . . . enuring [sic] to the Estate of Raul . . . instead of Sally."

Under the agreement, Norma I. was required to "list the property for sale with a licensed New Jersey realty firm," and Sally could not "impede the showing or marketing of the property or . . . interfere with the sale." If an offer was made, Sally had "two days . . . to make a higher offer and provide proof of

---

[1] We use first names to avoid any confusion caused by the common surname and intend no disrespect.

[2] Raul's relationship to the parties is unclear in the record.

A-2255-24

ability . . . to close for that amount." If Sally's offer was the highest offer and Sally was "pre-approved for the appropriate mortgage amount, Sally [would] become the contract purchaser." Otherwise, the property would be sold to a third-party buyer.

On April 14, 2023, Sally entered into a contract with Norma I. to purchase the property for $510,001.00. The contract was amended on May 15, 2023, to add Arturo Berly, Sally's husband, and Matthew A. Berly, Sally's son, as purchasers. Subsequently, when the purchase never came to fruition, Norma I. moved to compel Sally to sign a listing agreement to sell the property or, in the alternative, allow Norma "to sign the [l]isting [a]greement on behalf of Sally." During oral argument conducted on November 13, 2023, Norma I. argued Sally lacked the necessary funds to purchase the property, a contention Sally disputed. Sally explained she had lived in the "property for [thirty years]," "own[ed] the property next door," and should be afforded the opportunity to purchase the property.

The trial judge denied Norma I.'s motion. In a December 4, 2023 order, the judge directed the property be sold to Sally, Arturo, and Matthew "in accordance with [the] existing contract" within forty-five days. The order

3

further directed that if the closing did not occur within forty-five days "through no fault of [the] seller, either party [could] make [a] new application."

Thereafter, Norma filed a motion to compel the sale of the property. In a supporting certification, Norma averred that the closing ordered in the December 4, 2023 order did not occur within forty-five days as directed in the order. She sought an order compelling Sally "to sign the [r]eal [e]state [l]isting [a]greement and all other documents needed to convey the property to a new buyer," or "allow [Norma] to sign all the necessary documents if Sally . . . refuses to do so." In an opposing certification, Sally averred that she, her husband, and her son were "ready[,] willing[,] and able to close" in accordance with the existing contract but both Norma I. and Norma "failed to cooperate."

During oral argument conducted on June 14, 2024, each party attributed fault to the other for the failure to close. Following argument, the judge denied the motion, stating the April 14, 2023 contract for the sale of the property to Sally, Arturo, and Matthew was "still in full force and effect." In an oral opinion, the judge recounted:

> This [c]ourt entered an order on December 4, 2023[,] that compelled the . . . sale of the subject property to Sally . . . , Arturo . . . , and Matthew . . . in accordance with an existing contract and other exhibits[,] and required the parties to cooperate to enable completion of sale within [forty-five] days

4

which would have been at the end of January. The seller Norma I. . . . was to provide the documents reasonably required by the title agent including payoff statements for all liens. The order of December 4, 2023, further provided that if closing does not occur within [forty-five] days through no fault of the seller either party may make a new application.

It is now June 14th and this application is first coming to this [c]ourt. The parties are pointing fingers at each other regarding who did or did not comply with this order. Without a full . . . evidentiary hearing, the [c]ourt is not in a position to ascertain who if anyone is responsible for the delay.

I will extend for [thirty] days . . . from today the right of Sally . . . , Arturo . . . , and Matthew . . . to purchase this property. If closing is not completed by that date, then Norma I. . . . may have the property listed for sale through a commercial real estate broker.

The judge entered a memorializing order that was filed on June 20, 2024, directing that the sale of the property be completed by July 19, 2024.

Subsequently, Norma I. moved to "compel Sally . . . to sell the property . . . to Edy Tapia and Livia R. Ramirez or allow Norma . . . to sign the closing documents on behalf of Sally." In a supporting certification, Norma I.'s attorney stated Sally "did not purchase the house from her mother and sister" in accordance with the June 20, 2024 order. According to the attorney, because Sally failed to purchase the property within the time frame, Norma I. "list[ed] the property with . . . a real estate broker" and, on September 11, 2024, "signed

5

a contract to sell the property to Edy Tapia and Livia R. Ramirez for $560,000.00." The attorney averred the title company required Sally to "sign the closing documents" for the closing to proceed but Sally refused.[3]

In an opposing certification, Sally's attorney averred Sally, her husband, and her son "were ready[,] willing[,] and able to close in accordance with the contract and . . . order but the transaction was not cleared to close by [the] lender and title agent until a few days after July 19, 2024" and Norma I. refused to grant an extension. Sally's attorney attached "a proposed contract amendment matching the [$560,000] price . . . of the proposed alternate buyers" and requested "a court order reaffirming the contract as amended and continuing the June 20, 2024 [o]rder through actual closing."

After hearing argument on January 15, 2025, the judge granted Norma I.'s motion based on "fairness," commenting "[e]nough is enough." In a memorializing order entered on the same date, the judge directed Sally to "execute all necessary documents for the sale of the property . . . to Edy Tapia and Livia R. Ramirez on or before the close of business on January 17, 2025."

---

[3] In his certification, the attorney noted the property was now "in foreclosure and soon to be scheduled for a Sheriff's Sale."

A-2255-24

The order further stated "[i]n the event that Sally . . . fails to do so, Norma . . . is hereby authorized to sign the closing documents on behalf of Sally."

Sally moved for reconsideration of the January 15, 2025 order. In a supporting certification dated February 2, 2025, for the first time, Sally and Arturo averred Sally "[could not] sign an affidavit of title stating that her husband never occupied the property as principal marital residence" because Arturo "acquired a possessory marital interest when Sally . . . received a title interest [on] May 16, 2019." They asserted since Arturo was not required "to give up his marital interest[,] Norma I. and Norma cannot convey good title to Edy Tapia[ and ]Livia R. Ramirez."

On February 20, 2025, the judge entered an order denying Sally's motion. In an accompanying statement of reasons, the judge stated:

> [Sally] claims . . . the January 15, 2025 decision was arbitrary, capricious[,] and unreasonable and that the court failed to consider the facts put forth in the February 2, 2025 [c]ertification of Sally . . . and Arturo . . . . However, it is clear from the reasons put forth on the record on January 15, 2023, all facts then in evidence were considered and that the requesting [o]rder was not arbitrary, capricious, and/or unreasonable . . . . [Sally] fails to provide the court with new information as to why reconsideration is appropriate or why the previous decision was improper. Ultimately, [Sally] has failed to produce new evidence as to why the [o]rder for [r]econsideration should be granted. For the foregoing reasons, [Sally's] motion for

reconsideration is hereby denied.  If it has already not been consummated, the sale to Edy Tapia and Livia R. Ramirez shall go forward as previously [o]rdered. Norma [I.] . . . is permitted to sign on behalf of Sally.

This appeal followed.

On appeal, Sally raises the following Points for our consideration:

POINT I.    COURT CANNOT ORDER A FALSE AFFIDAVIT.

POINT II.    [RULE] 4:49-2 REQUIRES THE COURT RECONSIDER BECAUSE THE SPOUSAL RIGHT OF POSSESSION IS A CONTROLLING STATUTE.

POINT III. EQUITY REQUIRES SALE TO A FINANCIALLY QUALIFIED FAMILY MEMBER.

POINT IV. PUBLIC POLICY TO ENFORCE CONTRACTS PREVAILS OVER ATTEMPTS TO AVOID RESPONSIBILITY BY TIME OF ESSENCE CLAIMS.

Our standard of review is well established.  We review a trial court's decision on a motion for reconsideration under an abuse of discretion standard. Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015).  "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'"  Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

8

Under Rule 4:49-2, reconsideration is only appropriate for a "narrow corridor" of cases in which the court's decision was made upon a "palpably incorrect or irrational basis," or where "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence," Fusco v. Bd. of Educ., 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)), or where the moving party is presenting "new or additional information . . . which it could not have provided on the first application." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria, 242 N.J. Super. at 401-02).

"A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt" and "[r]econsideration cannot be used to expand the record and reargue a motion." Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (first alteration in original) (quoting D'Atria, 242 N.J. Super. at 401). Indeed, "[a] motion for reconsideration is designed to seek review of an order based on the evidence before the court on the initial motion, not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Ibid. (citation omitted) (citing Cummings, 295 N.J. Super. at 384). In fact, the moving party must "initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or

unreasonable manner[] before the [c]ourt should [even] engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401.

Applying these principles, we discern no abuse of discretion in the judge's denial of Sally's motion for reconsideration. Relying on her certification supporting reconsideration, Sally argues Arturo's "marital right of possession" prevents her from signing "a non-marital residence affidavit as it is false." However, despite Sally's prior knowledge, this issue was never raised before the judge in the initial motion and constitutes an impermissible attempt to introduce new evidence "to cure an inadequacy in the motion record." Asterbadi, 398 N.J. Super. at 310. Indeed, in their reply certification dated February 16, 2025, submitted in support of the reconsideration motion, Sally and Arturo conceded Arturo's marital interest "was not previously raised as an issue."

"Filing a motion for reconsideration does not provide the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015). "In short, a motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling." Ibid. In Bostock v. High Tech Elevator Indus., Inc., 260 N.J. Super. 432, 447 (App. Div. 1992), we held the plaintiff's "motion for

reconsideration was properly denied because it raised issues and theories never presented at trial," and having not properly raised the points in the trial court, the plaintiff was "precluded from advancing them on appeal." Likewise, here, Sally's argument that she "cannot sign a non-marital residence affidavit" raised for the first time in her reconsideration motion is barred.

Equally unpersuasive is Sally's argument that the judge should have applied "equitable principles" to "preserve continued family ownership by Sally who grew up in the house, occupied it as principal marital residence[,] raised her children there[,] and owns the property next door."

> [E]quity will generally conform to established rules and precedents, and will not change or unsettle rights that are created and defined by existing legal principles. This is the basis for the equitable maxium "equity follows the law," which instructs that as a rule a court of equity will follow the legislative and common-law regulations of rights, and also obligations of contract.
>
> [Borough of Seaside Park v. Comm'r of N.J. Dep't of Educ., 432 N.J. Super. 167, 222 (App. Div. 2013) (alteration in original) (quoting Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 183 (1985)).]

Here, Sally presented no legal basis for her argument. Further, the judge provided her with several opportunities to purchase the property, all to no avail.

We also reject Sally's contention she was entitled to "a do-over on a future date" because the "transaction did not close" due to "circumstances beyond [her] control." The judge ordered the sale to third parties because Sally breached the agreement by not consummating the purchase in the requisite time period. See Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007) ("To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his [or her] obligations under the contract[,] and that the plaintiff sustained damages as a result."). We discern no error in the judge's ruling.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-2255-24