**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3453-15T4

JOHN M. BALKOVIC,

      Plaintiff-Respondent/
Cross-Appellant,

v.

MARIANNE BALKOVIC,

      Defendant-Appellant/
Cross-Respondent.

_____

Submitted November 5, 2018 – Decided January 18, 2019

Before Judges Messano and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0677-09.

Atkinson & DeBartolo, PC, attorneys for appellant/cross-respondent (John F. DeBartolo, on the brief).

Law Offices of O'Toole & Gunteski, LLC, attorneys for respondent/cross-appellant (Michael J. Gunteski, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant (ex-wife) appeals from a March 7, 2016 Family Part order, that denied her motion to reconsider or vacate a November 9, 2015 order. Plaintiff (ex-husband) cross-appeals from the denial of his request for counsel fees. We affirm.

The parties married in 1990 and divorced in 2009. Three children were born of the marriage; M.B.,[1] a boy born October 1992; P.B., a girl born April 1995; and C.B., another girl born June 2000. Under the parties' property settlement agreement (PSA), which was incorporated into their November 17, 2009 judgment of divorce (JOD), "[c]ommencing December 1, 2009," plaintiff agreed to pay defendant "permanent alimony . . . in the amount of $60,000[] per year[.]" The alimony award was "based upon [plaintiff] having [a] gross average annual income of $205,000[]," and defendant being "imputed [a] gross annual income of $25,000[]." In the PSA, the parties acknowledged that despite the income imputed to defendant for purposes of calculating alimony, "[defendant] may not be employed while she [was] pursuing her education."

Under the PSA, the parties also agreed to "share joint legal custody of the [three] unemancipated children" with plaintiff "designated" the "[p]arent of

---

[1] We refer to the children by initials to protect their privacy.

[p]rimary [r]esidence" and defendant "designated" the "[p]arent of [a]lternate [r]esidence."  Regarding support and maintenance of the children, Article III of the PSA specified:

> In recognition of [defendant's] commitment to her education leading to her career[,] there will be no child support paid from one party to the other.  Each party shall be responsible to provide for the [c]hildren['s] needs when each has physical custody of the [c]hildren or any of them.  [Defendant] anticipates completing both her prerequisites and the required courses to obtain her certification as an [ultrasound] technician in or about the Spring of 2014.  Commencing one month following [defendant] obtaining full employment as an [ultrasound] technician, or comparable employment, or [defendant] voluntarily abandoning her pursuit of [a] career or education, the parties shall then calculate, using the then effective Child Support Guidelines [(Guidelines)] and actual incomes, the appropriate amount of [c]hild [s]upport, if any, to be paid by one party to the other.

Additionally, the parties agreed

> to deviate from the Guidelines approach due to the unique factors present in their lives.  Nevertheless[,] in the event that there is a significant change of circumstances [on] the part of either party, . . . either party shall have the right to seek relief as to [c]hild [s]upport and child-related provisions in a court of competent jurisdiction.

As to post-secondary education for the children, the parties agreed that:

> If the minor children of the marriage are capable of and have the ability to attend post-secondary education . . .

A-3453-15T4

the parties, to the extent that he or she shall be financially able, shall pay for or contribute to said education. . . . If there is any dispute as to whether either party is financially able, or the extent of either's financial ability, to contribute to or pay for said education, such dispute may be submitted to . . . a [c]ourt.

The parties acknowledged the existence of an account containing approximately $34,000 in "college funds . . . on behalf of the children," but agreed that the funds "may be used to pay for [defendant's] college courses, at Brookdale College [(Brookdale)] for the purpose of her securing education to become a sonogram technician."

In executing the PSA, "each [party] acknowledge[d] and represent[ed] that th[e] Agreement ha[d] been executed . . . free from persuasion, fraud, undue influence, or economic, physical, or emotional duress of any kind whatsoever." Further, the parties "acknowledge[d] that the legal and practical effects and the consequences of th[e] Agreement and of each of its provisions have been fully explained to them by their counsel," that they were "satisfied with the advice and service" of their respective attorney, and that they "enter[ed] into th[e] Agreement freely and voluntarily."

On January 28, 2015, plaintiff filed a motion "to recalculate child support effective June of 2014[,]" to modify his "alimony obligation" based on his

decreased income, to order defendant "to contribute to the college cost of the parties' minor children[,]" and for "counsel fees and costs incurred in connection with [the] motion." In addition, plaintiff sought "full discovery" of defendant's financial information, including an updated "Case Information Statement [(CIS),] . . . tax returns and W[-]2'[s,]" along with "updated information regarding the status of her ultrasound technician certification[,]" as well as other relief.

In a supporting certification, plaintiff stated that several financial provisions in the PSA revolved around defendant pursuing her education in order to obtain her ultrasound technician certification "in the Spring of 2014." However, according to plaintiff, defendant failed to advise him of the status of her certification or provide any financial information despite multiple requests for information by him and his attorney. Plaintiff also submitted an updated CIS, tax returns, and payroll statements showing a $62,000 reduction in his income "since the time of [the] divorce" due to "the economy and not through any fault of [his] own." Thus, plaintiff sought child support for the unemancipated children, contribution to P.B.'s college expenses for which

plaintiff paid 100% of the costs incurred thus far amounting to approximately $40,892.40,[2] a reduction of his alimony obligation, and counsel fees.

After defendant failed to respond to the motion, on April 14, 2015, the motion judge entered an order, granting plaintiff's request in part. In the statement of reasons accompanying the order, initially, the judge noted that plaintiff's attorney certified that defendant was "served via regular and certified mail, pursuant to [Rule] 1:5-2." Next, the judge delineated the applicable provisions of the PSA. Finding "'no legal or equitable basis' to reform the parties' agreement" as countenanced in Miller v. Miller, 160 N.J. 408, 419 (1999), the judge determined that "[d]efendant voluntarily entered into the PSA fully aware of her obligation to obtain a certification as an ultrasound technician, and further, of her obligation to provide [p]laintiff with information regarding same." The judge

> agree[d] with [p]laintiff that it ha[d] been almost a year since [d]efendant was obligated to obtain her certification and provide [p]laintiff with proof of same, yet [d]efendant ha[d] failed to comply with her obligation. Defendant ha[d] additionally failed to respond to [p]laintiff's motion, and likewise, failed to inform the [c]ourt of her current occupational status.

---

[2] Although plaintiff certified he also paid 100% of M.B.'s college expenses, he indicated that those expenses were paid from the college fund and thus sought no contribution.

Further, the judge determined that "[a]lthough the parties specifically agreed to forego child support during the time that [d]efendant was to complete her education," relying on Lepis v. Lepis, 83 N.J. 139 (1980), and Bencivenga v. Bencivenga, 254 N.J. Super. 328, 331 (App. Div. 1992), the judge concluded that plaintiff "ha[d] demonstrated a substantial change in circumstances warranting an award of child support" because "it ha[d] been ten months since [d]efendant was obligated to obtain her [ultrasound] technician certification." Additionally, relying on Newburgh v. Arrigo, 88 N.J. 529, 545 (1982), and Blum v. Ader, 279 N.J. Super. 1, 4-5 (App. Div. 1994), the judge found that "both parents expressly stated their desire to provide for the[ir] children's college educations" and "[d]efendant had an obligation to contribute" to that education.

Thus, the judge ordered "[d]efendant to provide a full and complete [CIS] along with tax returns and W-2's" and ordered "[d]efendant to provide updated information regarding the status of her ultrasound technician certification" within fourteen days of the order. The order specified further that once defendant "submit[s] to the [c]ourt the financial information ordered," the "[c]ourt shall subsequently issue a supplemental order initiating a child support order" and "addressing the parties' financial obligation to the children's college educations."

The judge also awarded plaintiff $1537.30 in "counsel fees and costs incurred in connection with [the] motion." After applying N.J.S.A. 2A:34-23, Rules 4:42-9 and 5:3-5, R.P.C. 1.5(a), and Mani v. Mani, 183 N.J. 70, 94 (2005), the judge found "it appropriate to award counsel fees to [p]laintiff in light of the fact that [d]efendant receive[d] significant alimony" and "proceeded in bad faith due to her refusal to cooperate and respond to [p]laintiff's inquiries regarding both her educational and financial status." However, the judge denied "[p]laintiff's request to modify his alimony obligation" based on his decreased income. The judge determined that she had "not been provided with sufficient proof of the permanency of [p]laintiff's financial circumstances" to meet "his burden of demonstrating a prima facie case of substantial and permanent change in circumstances."

On May 5, 2015, plaintiff's counsel served upon defendant via regular and certified mail a copy of the April 14, 2015 order, and renewed his request for updated financial information and the status of her ultrasound technician certification. When defendant failed to respond, plaintiff moved to enforce the April 14, 2015 order, and sought an order finding defendant in violation of litigant's rights. Plaintiff requested the court impute an annual income to defendant of between $65,438 and $78,952, based on the New Jersey Wage

Compendium for ultrasound technicians, to reflect the amount she should be making had she completed her training as contemplated by the parties' PSA. He sought an order directing defendant to pay him child support in the amount of $297 per week, retroactive to the filing date of the previous motion, directing defendant to contribute to P.B.'s college expenses, and directing all future college costs be allocated forty-five percent to defendant and fifty-five percent to plaintiff. Plaintiff also requested a reduction in his alimony payment by $500 per month until defendant's debt was paid in full, and that he be permitted to deduct child support from future alimony payments. Additionally, plaintiff sought counsel fees in connection with the current motion, and payment of the counsel fees ordered in the April 14, 2015 order.

On November 9, 2015, after acknowledging that defendant "was properly served but failed to file [any] [o]pposition[,]" a different judge granted plaintiff's motion, finding defendant "in violation of litigant's rights" for failing to "provide the [c]ourt with th[e] information" previously ordered and comply with the other provisions of the order. The judge imputed an annual income to defendant of $70,000, and ordered her to pay $297 per week in child support, $25,781.40 in college expenses, and allocated forty-five percent of future college costs to her. The judge ordered plaintiff's alimony obligation reduced by $500 per month

until the $25,781.40 debt was satisfied, and permitted plaintiff to deduct child support from future alimony payments. The judge also awarded plaintiff counsel fees for the current motion.

On December 10, 2015, defendant moved for reconsideration of the November 9, 2015 order, pursuant to Rule 4:49-2, or to vacate the provisions of the order, pursuant to Rule 4:50-1. Defendant sought relief "from any obligation to reimburse plaintiff for any past college expenses paid by him; . . . any obligation to pay child support to plaintiff until such time . . . she obtains full time employment; [and] . . . [r]equiring plaintiff to pay [her] attorney's fees and costs" in connection with her application. In her supporting certification, defendant asserted both procedural and substantive grounds for relief.

As to the procedural grounds, initially, defendant asserted she did not receive the November 9, 2015, order as well as a copy of the April 14, 2015 order, until November 20, 2015. Nonetheless, defendant did "not dispute" receiving plaintiff's motion to enforce the April 14, 2015 order, but noted "the [n]otice of [m]otion . . . was not dated" nor was there a "date set forth as to when the motion would be heard by the [c]ourt." According to defendant, since she did not "receive[] any notification from the [c]ourt, from plaintiff, or from

plaintiff's counsel, as to the date that the [c]ourt would address" the motion, "[she] did not submit any opposition."

Regarding the substantive grounds, defendant certified that although "[i]t was anticipated" under the PSA that she would obtain her ultrasound technician certification "in or about Spring 2014[,] . . . due to circumstances beyond [her] control, that goal was not reached." According to defendant, despite being admitted to Brookdale in November 2009, and matriculating from the Spring 2010 to the Summer 2012 semester, "the ultrasound program at Brookdale . . . was discontinued before [she] could complete [her] prerequisites and enter into the program."

Defendant certified that, as an alternative, she enrolled at the Medical Career Institute in January 2013, "pursuing a career as a surgical technologist[.]" However, after completing Stage One, "[i]n February 2013, [she] was involved in a devastating single car accident," which "hinder[ed] [her] ability to attend classes on a full-time basis." Since that time, "[she] completed an unpaid externship" and "re-enrolled at the Medical Career Institute on March 13, 2015," with an "anticipated completion date [of] April 29, 2016." According to defendant, if she passes the National Board of Surgical Technologist Association exam, she would begin employment in the Spring of 2016, "at which

A-3453-15T4

time [she] . . . anticipate[d]" earning an "entry level salary" of "approximately $30,000[] per year, which [was] nowhere near the $70,000[] per year" salary "imputed to [her]."

Defendant also objected to the child support award and pointed out that the Guidelines attached to plaintiff's certification were erroneous inasmuch as it "calculate[d] child support for three . . . children" when the oldest child "should be considered emancipated" and the "older daughter . . . [was] in residence at college." In addition, according to defendant, the Guidelines "provide[d] . . . no overnights for [her,]" when "[their] daughters in fact . . . spen[t] significant overnights with [her]." Regarding the allocation of college expenses, defendant noted that under the PSA, "contribut[ion] to post-secondary education [was] only if a party [was] 'financially able' to do so" and "[she] was never consulted as to the choice of college, or as to the payment for same." Finally, defendant objected to the award of counsel fees, asserting that she did "not have the ability to pay." Defendant attached her current CIS "as well as one from December 29, 2008, which preceded the entry of [the JOD,]" and pointed out that plaintiff did not "provide his end of year 2014 income," nor the first nine months for 2015.

In response, plaintiff opposed defendant's motion, and cross-moved for enforcement of the court's prior orders. Plaintiff sought an order finding

defendant in violation of litigant's rights and awarding counsel fees and costs. In his supporting certification, plaintiff asserted that along "with the motion[,]" defendant was served with a "[N]otice to [L]itigants," as required under <u>Rule</u> 5:5-4(d), which explained the process. Further, while plaintiff conceded that "[their] oldest son should be emancipated" and child support "recalculate[d]," plaintiff disputed defendant's claim that Brookdale discontinued "[t]he [u]ltrasound [t]echnology program," explaining the "program is now known as [d]iagnostic [m]edical [s]onography." Defendant countered that "the diagnostic medical sonography program require[d] as one of its prerequisites[,] the 'minimum of an Associate's Degree[,]'" which she did not have.

Following oral argument, on March 7, 2016, the judge issued a written opinion, denying defendant's motion "except with regards to child support, which the parties agree[d] [had] to be [re-]calculated." The judge also granted plaintiff's cross-motion, in part. Initially, the judge determined it was "unclear whether [defendant's] motion for [r]econsideration was timely served."[3] Nonetheless, the judge addressed the merits and determined that "[a]lthough [defendant] offer[ed] new evidence for the [c]ourt to consider, all of this

---

[3] Under <u>Rule</u> 1:7-4(b) and <u>Rule</u> 4:49-2, a motion for reconsideration must be made "not later than [twenty] days after service" of the order.

information was available to [her] at the time the [c]ourt decided the prior motion," and, despite having notice of plaintiff's application, defendant "did nothing until after the [c]ourt issued its order of November 9, 2015."

While crediting defendant for conceding that she received and reviewed plaintiff's motion papers, including the "Notice to Litigants, which clearly explain[ed] the procedure for a litigant to respond," and that "she failed to follow several orders, which to this day, have not been fully complied with[,]"[4] the judge noted that "to this date, [defendant] provide[d] no good cause" for her recalcitrance. The judge was "troubled that a litigant would blatantly disregard court orders and attorney correspondence for [eighteen] months" and determined that "her pro se status [did] not excuse her from refusing to participate in the litigation" or "comply with the [court rules] and court orders."[5]

Regarding the calculation of child support, the judge explained that "[defendant] has an obligation to support her children." Further, given defendant's repeated failure "to produce financial documents and respond to

_____

[4] The judge rejected defendant's explanation at oral argument "that she did not have time to attach the missing documents to her motion," characterizing her "reason" as "circumspect."

[5] Defendant was represented by counsel by the time she moved to reconsider or vacate the November 9, 2015 order.

[the] motions," the judge "relied on the PSA, which stated that by Spring of 2014, [defendant] would be employed as an ultrasound technician." Thus, the judge considered plaintiff's income as provided for "2013 and 2014 where he earned $148,000 in each of those years" and, in the absence of any information from defendant, "imputed $70,000" in income to her. See Caplan v. Caplan, 182 N.J. 250, 269 (2005) (endorsing "the imputation of income approach" for "promoting a fair and just allocation of the support obligation"); Halliwell v. Halliwell, 326 N.J.Super. 442, 448 (App. Div. 1999) (stating that "[t]he potential earning capacity of an individual, not his or her actual income, should be considered when determining the amount a supporting party must pay").

The judge acknowledged that plaintiff "did not provide his 2015 W-2 or income tax [return]," but noted that "the cross-motion was filed on December 31, 2015, before those documents would have been available." Nonetheless, given both parties' failure to provide all required financial documents in accordance with Rule 5:5-4(a), the parties' agreement that their oldest child, M.B., was now emancipated,[6] and their representation during oral argument that they could negotiate child support, the judge deferred the actual child support

---

[6] The judge noted that because M.B. was not emancipated at the time of the prior order, the court did not err in calculating support for the three children.

calculation to allow the parties to reach an agreement. Otherwise, the judge directed the parties to file the appropriate motion.

Likewise, regarding college costs, the judge explained that in the absence of any financial information from defendant, the college cost allocations were based on the financial information presented to the court "at the time of the previous motion." The judge pointed out that after "factor[ing] in [defendant's] receipt of alimony from [plaintiff] with her imputed income of $70,000, the [c]ourt could have imposed a higher allocation of college costs to [defendant]." Nonetheless, the judge directed defendant to file a motion to modify her contribution "[i]n the future," once she complied "with all the prior orders."

The judge explained that contrary to defendant's argument, "she [was] not being denied her request for relief simply because she failed to respond [to] or ignored various court orders, but rather, primarily because she failed to comply with the PSA for which [plaintiff] [sought] enforcement."[7] The judge concluded that "[defendant] breached the [P]SA" by "not complet[ing] her certification to be an ultrasound technician in June 2014 as she was required to" and not completing any other program "in six years[.]" According to the judge, "[i]t

---

[7]  Absent "compelling reasons to depart from the clear, unambiguous, and mutually understood terms of the PSA," a court is generally bound to enforce the terms of the PSA. Quinn v. Quinn, 225 N.J. 34, 55 (2016).

[was] unfortunate that [defendant] did not communicate with [plaintiff] for [eighteen] months, because a more favorable arrangement could have been reached than what was decided in the [o]rder of November 2015."

Nonetheless, the judge concluded that "[i]n light of all the circumstances, . . . the prior decision was fair and . . . equity [did] not entitle [defendant] to a third bite at the apple." Moreover, according to the judge, "[a]lthough defendant claim[ed] that this [was] unfair, she [did] not articulate how the [c]ourt's decision [was] based on plainly incorrect reasoning or how the [c]ourt failed to consider evidence" to warrant reconsideration under Rule 4:49-2. Likewise, other than her claim that "she was unaware of the specific return date[,]" defendant failed to "demonstrate[] any reason, let alone a compelling reason, for her failure to respond to [plaintiff's] motion," to justify vacating the order under Rule 4:50-1.

Turning to the parties' request for counsel fees, the judge determined:

> Here, both parties seek counsel fees in connection with their current applications. [Defendant] argues that she does not have the ability to pay [plaintiff's] counsel fees. [Plaintiff] was previously awarded counsel fees on April 14, 2015[,] and November 9, 2015. The [c]ourt, however, does not find either party's requests to have been brought in bad faith at this time. Therefore, the [c]ourt having considered the totality of the circumstances and applying the standards set forth in N.J.S.A. 2A:34-23, [Williams v. Williams, 59 N.J.

229, 233 (1971)], and [Rule] 1:10-3, finds that each party shall be responsible for their own counsel fees and costs.

The judge entered a memorializing order and this appeal and cross-appeal followed.

On appeal, defendant argues that by calculating "child support and college contributions . . . using the imputed income suggested by [plaintiff] while ignoring [her] actual income . . . , despite the clear instructions provided within the parties' [PSA,]" the judge's "decision [was] based 'upon a palpably incorrect basis.'" She also argues that the judge relied on incomplete financial information provided by plaintiff, incorrect information as set forth in his attached Guidelines, and no analysis of the requisite factors to determine her obligation to contribute to the children's college expenses. She continues that "because she presented . . . probative and competent evidence upon which a fair, reasonable, and just determination of child support and college contributions could have been made[,]" she "was entitled to a reconsideration of the November 9, 2015 [o]rder." We disagree.[8]

---

[8] Defendant also argues that her motion for reconsideration "was timely made," and because "she did not have notice of the date the motion would be heard" or "when her opposition would be due[,]" she was deprived of "[p]rocedural [d]ue [p]rocess." Unlike Rubin v. Rubin, 188 N.J. Super. 155, 159 (App. Div. 1982),

Our standard of review on a motion for reconsideration is deferential. "Motions for reconsideration are governed by [Rule] 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion[.]" Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Rather, reconsideration

> should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

"In short, a motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors

---

where we held that denying a pro se litigant, who failed to file responsive papers but appeared in court on the return date of the motion, an opportunity "to address the merits of the motion he opposed, constituted a denial of fundamental procedural due process[,]" here, the judge addressed the reconsideration motion on the merits, despite questioning its timeliness. Thus, we need not address this argument on appeal.

19                                                                          A-3453-15T4

inherent in a prior ruling." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015). It "does not provide the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion." Ibid. Thus, we will not disturb a trial judge's denial of a motion for reconsideration absent a clear abuse of discretion. Pitney Bowes Bank, 440 N.J. Super. at 382. An "abuse of discretion only arises on demonstration of 'manifest error or injustice,'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Here, we discern no abuse of discretion. As the judge pointed out, she made the decision based on the evidence presented to the court at the time, and her decision was not based upon a palpably incorrect or irrational basis. On the contrary, the judge's decision complied with settled principles in determining child support and college contributions. See Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 588 (App. Div. 2016) (citing Gotlib v. Gotlib, 399 N.J. Super. 295, 308 (App. Div. 2008) (reiterating that the Family Part has substantial

discretion in determining child support and that discretion "applies equally to compelling a parent to contribute to their child's college costs."")).

Reconsideration is properly denied when the application is based upon unraised facts known to the moving party prior to the entry of the challenged order and "cannot be used to expand the record[.]" Capital Fin. Co. of Del. Valley. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). Rather, "[a] motion for reconsideration is designed to seek review of an order based on the evidence before the court on the initial motion, Rule 1:7-4, not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Ibid. (citing Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)).

Indeed, in Palombi, we held that the trial court was not even "required to engage in the reconsideration process" when appellant "sought reconsideration of [an earlier] order, which decided a motion for child support that he had not opposed." 414 N.J. Super. at 289. We determined appellant "failed to make the showing required to initiate the reconsideration process" because "[t]he assertions in his certification and the documents submitted, such as the CIS, constituted facts known to him prior to the entry of the order and were not an appropriate basis for reconsideration." Ibid. Likewise, here, defendant's

submission of new evidence known to her prior to the entry of the November 9, 2015 order, and her failure to satisfy the threshold requirement of demonstrating that the court acted in an arbitrary, capricious, or unreasonable manner, were fatal to her reconsideration motion.

Turning to the denial of the Rule 4:50-1 motion, defendant argues "that relief from the [o]rder [was] justified under [Rule 4:50-1(e)] because[] it [was] no longer equitable that the . . . order should have prospective application" inasmuch as "[defendant] provided the financial information and information about her career and education that the [c]ourt in making the November 9, 2015 [o]rder did not have." Additionally, she asserts she was entitled to relief under Rule 4:50-1(f) based on the "lack of notice . . . as to [the] hearing date, the incorrect and incomplete information provided, the wrongful assumptions upon which her income was calculated, and the incorrect calculations set forth in the [CIS]." According to defendant, "[t]hese grounds also qualify under [Rule 4:50-1(a) and (b)]" because she "demonstrated excusable neglect since she did not know the date of the hearing nor when to file any opposition" and "the evidence [she] presented . . . would most assuredly alter the [o]rder had such evidence been before the [c]ourt."

Rule 4:50-1 authorizes a court to relieve a party from an order for reasons such as: "mistake, inadvertence, surprise, or excusable neglect[,]" Rule 4:50-1(a); certain "newly discovered evidence[,]" Rule 4:50-1(b); or the fact that the order "has been satisfied, released or discharged," an underlying order "has been reversed or otherwise vacated, or it is no longer equitable" that the order "have prospective application[,]" Rule 4:50-1(e). Rule 4:50-1(f) is a catch-all provision that authorizes a court to relieve a party from an order for "any other reason[.]"

A Rule 4:50-1 motion is also reviewed under an abuse of discretion standard, Johnson v. Johnson, 320 N.J. Super. 371, 378 (App. Div. 1999), and "must be filed within a reasonable time[.]" Orner v. Liu, 419 N.J. Super. 431, 437 (App. Div. 2011); Rule 4:50-2. Moreover, "[t]he party seeking relief bears the burden of proving that events have occurred subsequent to the entry of a judgment that, absent the relief requested, will result in 'extreme' and 'unexpected' hardship." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 285-86 (1994) (quoting Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977)).

Here, defendant failed to meet her burden to justify relief under any of the Rule 4:50-1 exceptions. As the judge pointed out, given defendant's receipt of alimony, reduced from $60,000 to approximately $38,556 per year, and her

potential for earning the difference with a "minimum wage" job, "it [was] not as if she [was] being left destitute." Rule 4:50-1 is used "sparingly" and is limited to "exceptional situations . . . in which, were it not applied, a grave injustice would occur." Hous. Auth. of Morristown, 135 N.J. at 289. Defendant's assertions failed to meet that standard and, as the judge emphasized, defendant squandered multiple opportunities to oppose plaintiff's motion and failed to provide a plausible reason for her recalcitrance.

Finally, defendant contends that assuming she "was not entitled to any relief from the entry of the November 9, 2015 [o]rder," she "at the very least, should have been granted prospective relief based upon the information provided by her in her [CIS] and [c]ertifications which demonstrated a genuine issue as to material fact[s,]" requiring "a plenary hearing to resolve." Given the judge's explicit direction that defendant should file the appropriate motion once she complies with the prior court orders, we are satisfied that defendant's arguments in this regard are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In his cross-appeal, plaintiff argues he was entitled to counsel fees "based on the actions of the defendant and the extreme bad faith within her requests." "We will disturb a trial court's determination on counsel fees only on the 'rarest

occasion,' and then only because of [a] clear abuse of discretion." <u>Strahan v. Strahan</u>, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting <u>Rendine v. Pantzer</u>, 141 N.J. 292, 317 (1995)).  Here, we find no clear abuse of discretion and affirm the judge's denial of counsel fees substantially for the reasons set forth in the judge's written opinion, which analyzed all the factors in N.J.S.A. 2A:34-23, and <u>Rule</u> 5:3-5(c), and considered "the good or bad faith of either party in pursuing or defending the action," as contemplated in <u>Mani</u>, 183 N.J. at 94-95.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3453-15T4