**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0167-20

BRUCE E. KILMER, JR.,

     Plaintiff-Appellant,

v.

SHARON A. KILMER,

     Defendant-Respondent.

_____

Submitted November 1, 2021 – Decided November 24, 2021

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-1505-08.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the briefs.)

Ted M. Rosenberg, attorney for respondent.

PER CURIAM

     Plaintiff Bruce E. Kilmer, Jr. appeals from a July 10, 2020 Family Part order denying his motion to terminate or modify his permanent alimony and life

insurance obligations without prejudice. Applying N.J.S.A. 2A:34-23(j)(3), the judge concluded the factors weighed against terminating plaintiff's alimony and life insurance obligations and ordered him to pay $3,550 in attorney's fees to defendant Sharon A. Kilmer. Plaintiff also appeals the August 28, 2020 order denying his motion for reconsideration. We affirm both orders.

I.

The following factual history is derived from the motion record. After almost twenty-three years of marriage, plaintiff and defendant divorced in November 2009. They have two emancipated children. In their February 2, 2010 amended dual judgment of divorce (ADJD), plaintiff agreed to pay defendant permanent alimony effective January 1, 2010, in the sum of $625 per week. The parties were both fifty-one years old when the ADJD was entered. The ADJD provided "[t]he basis of the alimony is [defendant's] imputed income of $25,000 per year and [plaintiff's] income of $137,000 per year." The alimony obligation shall terminate upon either parties' death, defendant's remarriage, co-habitation with a non-relative person, "or [c]ourt determination." The ADJD also required plaintiff to "maintain life insurance in the amount of $300,000 naming [defendant] as beneficiary so long as alimony is payable."

A-0167-20

Under the ADJD, defendant kept the marital residence, although she was required to refinance the existing mortgage. As a result of retaining the former marital home and equity interest of $237,647, defendant agreed to waive her interest in plaintiff's carpenter's annuity having a value of $280,466 at the time of the divorce. The ADJD noted "[s]ince the [c]arpenter's [a]nnuity is being divided as equitable distribution, both sides waive any claim that the annuity is income or an asset for future alimony purposes." Their agreement also equitably divided other retirement accounts and savings plans awarding each party $25,222.50, plus $1,202 per month from plaintiff's carpenter's pension plan.

Plaintiff became eligible for retirement and his pension when he attained the age of fifty-four.[1] He certified that during the parties' marriage, they "discussed on many occasions . . . [he] would retire at [fifty-five]." Instead, plaintiff continued to work until retiring from his construction superintendent job on April 1, 2018, at the age of fifty-nine.

Because plaintiff retired before the age of sixty-two, he also qualified for the carpenter's supplemental pension payment. As of 2018, plaintiff's years of

---

[1] Members of the carpenter's union are eligible to collect their fully accrued monthly pension "beginning at age [fifty-two] with [thirty-three] years of credited service. The age and the years of credited service have to equal [eighty-five]." "Retirement" means the union member has "stopped all work with contributing Plan Employers and all suspend[a]ble employment."

credited service entitled him to a monthly payment of $6,075.78, consisting of his $2,472.79 monthly pension and a $3,602.99 supplemental benefit. Plaintiff's 2020 case information statement (CIS)[2] reveals he was receiving monthly payments of $6,122 during calendar year 2020. The supplemental pension terminated on plaintiff's sixty-second birthday in March 2021.

"As a superintendent on commercial projects primarily . . . valued . . . between $30,000,000 to more than $100,000,000," plaintiff certified he led "and manag[ed] the onsite construction contractors . . . and over[saw] all work on site." The "job required [plaintiff] to spend most of [his] time on the project site[,] which included having to stand for several hours at a time and be exposed to the elements and working on uneven surfaces and having to use ladders and scaffolding to inspect work in progress." He also had some administrative duties. Despite retiring, "due to the availability of work the Northeast Regional Counsel of Carpenters, Local 158 allowed [plaintiff] to continue to work."

---

[2] Rule 5:5-4(a)(5) states, "Upon application by the obligor to modify or terminate alimony based upon retirement pursuant to N.J.S.A. 2A:34-23(j)(2) and (j)(3), both the obligor's application to the court for modification or termination of alimony and the obligee's response to the application shall be accompanied by current [CIS] as well as the [CIS's] previously executed or filed, or other relevant financial documents if there was no [CIS] executed or filed, in connection with the order, judgment or agreement sought to be modified." See also N.J.S.A. 2A:34-23(j)(3) (requiring same).

Therefore, he "was able to collect [his] basic pension amount, [his] supplemental pension and [his] salary." As stated on plaintiff's 2020 CIS, he earned a net income of $200,516 in 2019. This included an earned income of $193,240, plus $73,635 from pensions and annuities. He was on track to earn approximately $200,000 again in 2020. The record shows in prior years, plaintiff would receive a $5,000 bonus and a $7,460 holiday supplement.

In March 2020, plaintiff ceased working entirely. He claimed, "[i]n light of the corona virus pandemic[,] construction has slowed down substantially." Plaintiff is now over sixty years old, and he did not want to be near others during the pandemic. Furthermore, due to the time on his feet, plaintiff's knees "ache" when he awakes in the morning, he experiences "trouble" with his feet, but "for the most part" he is "healthy." He also explained that "[t]his is a young man's job" since he has to "climb ladders and stand on scaffolding at extreme heights," which makes him "uncomfortable" at his age. Plaintiff reasons the union's incentives to retire its employees between the ages of fifty and sixty years old evinces his point. Accordingly, plaintiff believes that it was an appropriate time for him to "fully retire."

Since plaintiff is no longer employed by the union, his supplemental benefit ended. Therefore, he certified that his only source of income is his

A-0167-20

monthly pension payment of approximately $2,472.79. Plaintiff's 2020 CIS valued his net worth at $719,825.[3] He is remarried and shares expenses with his new wife.

As for defendant, she claimed she sacrificed her career to be a stay-at-home mom while plaintiff pursued his career. Since the divorce, she has worked two jobs. Defendant works "for Wegmans [in] the accounting office" and as a hairstylist for the Hair Cuttery. However, Hair Cuttery temporarily closed March 4, 2020, due to COVID-19 protocols. Since then, defendant has not worked as a hairstylist, and she relies on her income from Wegmans and her alimony payments. Wegmans provides defendant with health insurance benefits. Defendant has tendonitis in one hand and has difficulty standing for long periods of time.

Before the pandemic, defendant was working forty-eight to fifty hours a week between both jobs and now works approximately thirty-three hours a week. "Defendant's [i]ncome [t]ax return provides that she earned an annual

---

[3] Net worth is the difference between total gross assets and total gross liabilities. Plaintiff's total gross assets under the 2020 CIS equaled $868,276, and his total gross liabilities were $148,451.

income of $33,733 in 2019."[4]   Including $32,500 in alimony payments, defendant's net income in 2019 was approximately $62,000, representing almost one-half of her income.

In terms of defendant's assets, her 2020 CIS "provides that she has a single [individual retirement account (IRA)] containing only $6,000."  Defendant also owns the marital home debt free, having a value of approximately $268,000.  Defendant also has a WSFS Bank checking and savings account valued at approximately $128,000.  As per the terms of the ADJD, defendant is entitled to one-half of plaintiff's carpenter's $1,067.66 pension.  Defendant became eligible for these payments in 2014 when defendant became eligible, however, she does not have to receive payments until she retires.

On May 21, 2020, plaintiff filed a motion to terminate or modify his alimony and life insurance obligations.  In his moving certification, plaintiff contended he was entitled to relief because a combination of the nature of his work, the COVID-19 pandemic, and his health issues justified his retirement. He also argued his alimony obligation should be terminated, otherwise he would

---

[4]  Per Rule 5:5-4(a)(5) and N.J.S.A. 2A:34-23(j)(3), defendant was required to submit a current CIS.  Both the parties and the judge make explicit references to defendant's 2020 CIS and 2019 income tax returns throughout the record. However, both documents are absent from the parties' appendices.  Defendant's 2013 CIS is of record.

"have to access [his] retirement funds and savings to continue to pay [his] monthly expenses now that [he is] no longer working, especially once . . . [he turned sixty-two] and [his] pension is reduced by more than half" to $2,472.79 per month.

In response, defendant opposed plaintiff's motion and filed a notice of cross-motion. Defendant, then sixty-one years old, certified that alimony constitutes fifty percent of her income, and her expenses exceed her income even with the alimony payment. She asserted, "[t]he disadvantage to [me] by termination/modification of alimony far exceeds the benefit to [plaintiff]." Defendant also cross-moved to strike an exhibit from plaintiff's motion.

On July 10, 2020, the judge heard oral argument on the motions and placed his tentative decision on the record. The judge stated he would deny plaintiff's motion to terminate alimony without prejudice and grant defendant's cross-motion to deny terminating alimony because "the disadvantage to the defendant, who is the recipient of the alimony in this case, outweighs the advantage to the plaintiff based upon the statutory factors and the . . . facts presented." The judge explained:

> the plaintiff is [sixty-one] years old. He's not at . . . the age where, under the statute, he's presumed to be at . . . good faith retirement. So, the [c]ourt's determination is that . . . the pertinent statutory factors are . . . not

satisfied. Notably[,] the [c]ourt notes that the . . . defendant would be losing half of her annual income if the alimony is terminated based on the plaintiff's full retirement at age [sixty-one].

The judge then struck the exhibit from plaintiff's motion before tentatively awarding counsel fees. He granted the cross-motion for counsel fees because:

> primarily under the circumstances here, the . . . need of . . . the applicant, based on the . . . parties' relative financial circumstances, as well as the fact that the . . . motion itself was not a . . . successful motion. That weighs into the counsel fee ruling under the statutory and court rule and case law factors.

After plaintiff argued that the home and other assets defendant received during the divorce increased in value, thus reducing her need for alimony, the judge supplemented his decision:

> I don't think there's been [a] prima facie case that's been shown. The assets that were subject to equitable distribution are not . . . to be considered for purposes of . . . income generation for alimony, that's clear, to be in this case and . . . from the statute as well. And I have a defendant . . . that was working two . . . jobs, making $33,000 a year versus someone who's making almost $200,000 a year. They're both [sixty-one] years old. . . . I don't think it's appropriate to modify what was . . . a permanent alimony determination ten years ago under these circumstances.

Later that day, the judge issued a written decision. The judge listed the factors set forth in N.J.S.A. 2A:34-23(j)(3) and analyzed each one. Plaintiff

9

filed a timely notice of motion for reconsideration on July 28, 2020, requesting the judge to reconsider denying his motion to terminate or modify his alimony and life insurance obligations, the award of counsel fees, and schedule a plenary hearing. Plaintiff alleged the judge "erred in determining whether or not . . . [d]efendant had the ability to save for retirement," arguing her IRA account valued at $6,000 and the WSFS checking and savings accounts valued at $128,000 did not exist at the time the divorce was granted.

Consequently, plaintiff argued that defendant has the ability "to save significantly more than the parties were able to save during the marriage and" defendant was "living in excess of the marital standard of living." Plaintiff also contended factual disputes existed based on conflicting statements regarding defendant's ability to save, her budget, and equitable distribution. On the issue of counsel fees, plaintiff argued that he should not be penalized "for filing a motion when the statute enables [him] to do so."

On August 4, 2020, defendant filed a notice of cross-motion seeking to deny plaintiff's motion for reconsideration, requesting plaintiff verify his life insurance policy to secure his alimony obligation, and for additional counsel fees. Defendant argued that the judge correctly analyzed each alimony factor,

and reconsideration was inappropriate because plaintiff offered no new information and asserted no error.

On August 28, 2020, the judge heard oral argument on plaintiff's motion for reconsideration. In a comprehensive written decision, the judge denied plaintiff's motion in its entirety and granted all the relief requested in defendant's cross-motion. The judge held "[p]laintiff failed to establish his burden for reconsideration," and highlighted that defendant's WSFS accounts totaling $128,000 were insufficient savings to terminate and replace her alimony payments. In his decision, the judge emphasized "[d]efendant's savings would be depleted in less than four years," and "even after appropriate adjustments to [d]efendant's monthly budget, without [p]laintiff's alimony [d]efendant continues to experience a substantial monthly deficit as determined by the [c]ourt in its [July 10, 2020 o]rder." The judge granted defendant's cross-motion for counsel fees and awarded an additional sum of $3,095. Plaintiff's request for a plenary hearing was denied. A memorializing order was entered. This appeal ensued.

On appeal, plaintiff contends the judge improperly: (1) denied his motion to terminate or reduce alimony because of his retirement; (2) denied his motion

for reconsideration; and (3) awarded counsel fees to defendant for an application New Jersey law expressly provides a payor spouse may make.

## II.

"[W]e accord great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition "of the family courts' special jurisdiction and expertise in family matters," N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).  We are bound by the trial court's factual findings so long as they are supported by sufficient credible evidence.  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The court is required to examine and weigh a list of objective considerations when it reviews an alimony termination or modification request for an obligor who has retired.  Landers v. Landers, 444 N.J. Super. 315, 321 (2016) (citation omitted).  If the alimony order pre-dates September 10, 2014,

the request for modification or termination must be reviewed under N.J.S.A. 2A:34-23(j)(3). That section expressly requires "[i]n making its determination, the court shall consider the ability of the obligee to have saved adequately for retirement . . . [and] whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate." N.J.S.A. 2A:34-23(j)(3). The obligee's ability to have adequately saved is set "apart from other considerations and require[s] . . . explicit analysis." Landers, 444 N.J. Super. at 324 (citing N.J.S.A. 2A:34-23(j)(3)).

The statute requires the court to consider other factors, which include:

> (a) The age and health of the parties at the time of the application;
>
> (b) The obligor's field of employment and the generally accepted age of retirement for those in that field;
>
> (c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;
>
> (d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;
>
> (e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

13

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

[N.J.S.A. 2A:34-23(j)(3)(a) to (h).]

Under this statute, "retirement age" means "the age at which a person is eligible to receive full retirement for full retirement benefits under section 216 of the federal Social Security Act [(SSA), 42 U.S.C. § 416]." N.J.S.A. 2A:34-23. Per the SSA, "retirement age" is, "with respect to an individual who attains early retirement age after December 31, 2016, and before January 1, 2022, [sixty-six] years of age plus the number of months in the age increase factor . . . for the calendar year in which such individual attains early retirement age." 42 U.S.C. § 416(l)(1)(D). For those who attain "early retirement age" between 2017 and 2021, "the age increase factor shall be equal to two-twelfths of the number of months in the period beginning with January 2017 and ending with December of the year in which the individual attains early retirement age." 42 U.S.C. § 416(l)(3)(B).

Plaintiff was born in March 1959 and retired from his carpenter job at the age of fifty-nine years old on April 1, 2018. Therefore, he becomes eligible for social security benefits when he attains retirement on June 30, 2025, at age sixty-six years and four months old. 42 U.S.C. § 416(l)(1)(D); (3)(B). As the judge aptly found, "[t]he plaintiff is . . . [sixty-one] years old. He's not . . . at the age where, under the statute, he's presumed to be at . . . good faith retirement." Therefore, the judge correctly applied N.J.S.A. 2A:34-23(j)(3) in reaching his determination because the ADJD was finalized before the effective date of the statute—September 2014. See N.J.S.A. 2A:34-23(j)(3).

Importantly, "alimony and support orders define only the present obligations of the former spouses," and therefore, "are always subject to review and modification upon a showing of 'changed circumstances.'" Crews v. Crews, 164 N.J. 11, 24 (2000) (quoting Lepis v. Lepis, 83 N.J. 139, 146 (1980)); see also N.J.S.A. 2A:34-23 ("[Alimony orders] may be revised and altered by the court from time to time as circumstances may require."). The moving party "bears the burden of making a prima facie showing of changed circumstances" to initiate this modification. Crews, 164 N.J. at 28 (quoting Miller v. Miller, 160 N.J. 408, 420 (1999)). Changed circumstances generally means a recent inability to support himself or herself. Lepis, 83 N.J. at 157.

"Alimony is an economic right that arises out of the marital relationship and provides the dependent spouse with a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage."  Quinn v. Quinn, 225 N.J. 34, 48 (2016) (internal quotations omitted) (quoting Mani v. Mani, 183 N.J. 70, 80 (2005)).  This allows for the spouses to continue living according to "the standard of living enjoyed by the parties prior to their separation" and "to share in the accumulated marital assets to which he or she contributed."  Ibid. (first quoting Mani, 183 N.J. at 80; and then quoting Konzelman v. Konzelman, 158 N.J. 185, 195 (1999)).

Plaintiff's claim that his alimony and life insurance obligations should be terminated or modified is without merit.  The judge carefully applied N.J.S.A. 2A:34-23(j)(3)'s eight factors, and his findings appear well supported by the record.  Contrary to plaintiff's contention, it was not error for the judge to focus on plaintiff's general state of good health and ability to work at some sort of job. Moreover, it is unclear from the record whether plaintiff is currently working while collecting his pensions.  And, the judge correctly analyzed N.J.S.A. 2A:34-23(j)(4) by not considering the assets distributed between the parties at the time the ADJD was entered.  The judge conducted the requisite analysis here.

## III.

Our standard of review on a motion for reconsideration is deferential. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301 (2020)). "Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (citing Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008)).

Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). "[A] motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015). It "does not provide the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion." Ibid. (citing Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)). Thus, here, the judge did not abuse his

17

discretion by rejecting plaintiff's argument that defendant could sufficiently save money for her retirement.

Plaintiff asserts the judge overlooked "[d]efendant's WSFS checking and savings accounts containing approximately $128,000, which is in addition to [d]efendant[']s . . . [IRA]." Plaintiff argues the judge erred on this point because the ADJD did not include or equitably divide the WSFS accounts or thereby any income generated from these accounts for alimony calculation purposes. On the contrary, defendant certified these assets were derived primarily from assets distributed by way of equitable distribution.

The judge considered these facts and concluded that in any event, $128,000 is an inadequate amount of savings for defendant's retirement to justify termination of plaintiff's support obligations to her. Indeed, the judge estimated defendant would exhaust her savings in less than four years if she had to rely solely on her $128,000 in savings without receiving alimony payments. The judge's decision is based upon substantial credible evidence in the record.

We also reject plaintiff's argument that the judge erred by not reconsidering defendant's $762 monthly maintenance expense and her $173 monthly commuting expense. For the sake of argument, the judge reduced defendant's expenses for these items to $100 and $50 respectively, thereby

decreasing her monthly budget from $3,739 to $2,954. On an annual basis using these reduced figures, defendant's budget would be $35,448. Without alimony and her 2019 earned income of $33,733, the judge found defendant would have a monthly deficit of $142.92. The judge's decision was based on defendant's CIS and 2019 income tax return and did not constitute error. Palombi, 414 N.J. Super. at 288.

IV.

We next address the counsel fees awarded to defendant. Plaintiff argues the judge erred because he filed a "good faith application" to terminate or modify his alimony and life insurance obligations under the September 10, 2014 amendment to the alimony statute, which he asserts enabled "a fairer process for ending alimony obligations of retired ex-spouses."

Trial courts are authorized to award counsel fees in family actions. N.J.S.A. 2A:34-23; R. 4:42-9(a)(1); R. 5:3-5(c). The award of counsel fees falls within the sound discretion of the trial court. Bisbing v. Bisbing, 468 N.J. Super. 112, 121 (App. Div. 2021) (citing Williams v. Williams, 59 N.J. 229, 233 (1971)) (citations omitted). Rule 5:3-5(c) enumerates nine factors the court should consider in making an award of counsel fees in a family action.

> In a nutshell, in awarding counsel fees, the court must
> consider whether the party requesting the fees is in

19

> financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.
>
> [Mani, 183 N.J. at 94-95 (emphasis in original) (citations omitted).]

A trial judge's failure to consider the appropriate factors, make the required findings, and state its conclusions of law constitutes a clear abuse of discretion. See Saffos v. Avaya Inc., 419 N.J. Super. 244, 270-71 (App. Div. 2011); R. 1:7-4(a).

"A lawyer's fee must be reasonable." Giarusso v, Giarusso, 455 N.J. Super. 42, 50 (App. Div. 2018) (quoting Rosenberg v. Rosenberg, 286 N.J. Super. 58, 69 (App. Div. 1995)). Determining the reasonableness of the fee "involves determining the number of hours reasonably expended multiplied by a reasonable hourly rate." Id. at 51 (citing Rendine v. Pantzer, 141 N.J. 292, 334-35 (1995)). The factors to be considered include "the time and labor required," "the results obtained," and "whether the fee is fixed or contingent." Ibid. (citing RPC 1.5(a)(1), (4), and (8)).

We apply a deferential standard of review. An appellate court will not disturb a counsel fee award in a matrimonial case except "on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v.

Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine, 141 N.J. at 317). "An abuse of discretion occurs when a trial court makes 'findings inconsistent with or unsupported by competent evidence,' utilizes 'irrelevant or inappropriate factors,' or 'fail[s] to consider controlling legal principles.'" Steele v. Steele, 467 N.J. Super. 414, 444 (App. Div. 2021).

Here, the judge awarded defendant attorney's fees to defendant on plaintiff's initial motion and relative to his motion for reconsideration. In his July 10, 2020 order, the judge ordered $3,550 in counsel fees to defendant after considering the relevant factors, "including the parties' respective incomes." As to the August 28, 2020 order, the judge again reviewed the relevant factors and awarded $3,095 in counsel fees to defendant emphasizing "in particular the parties' respective incomes, respective financial circumstances, and ability of each party to pay his or her own fees, the reasonableness of the positions advanced, the extent of the fees incurred[,] and the results obtained." We discern no abuse of discretion.

Moreover, plaintiff's contention that his motions were filed in good faith is not dispositive. Regarding counsel fee applications, the court shall consider "the good or bad faith of either party." N.J.S.A. 2A:34-23. The statute "in unmistakable terms authorizes a trial court to take into consideration the good

or bad faith of the party against whom counsel fees are sought to be assessed."
Kothari v. Kothari, 255 N.J. Super. 500, 513 (App. Div. 1992).

The judge here did not specifically address the good faith or bad faith positions of either party but highlighted that plaintiff forced defendant to incur counsel fees to defend the motions and noted the motion for reconsideration presented the same arguments as the first motion. All the relief sought by plaintiff was denied. Hence, the award of counsel fees in both instances was not an abuse of discretion.

To the extent that we have not specifically addressed any of plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION